Stacey H. Crawshaw, OSB #146074
Stacey.Lewis@pacificalawgroup.com
PACIFICA LAW GROUP LLP
401 Union St., Suite 1600
Seattle, WA 98101-2668
(206) 245-1700

Paul J. Lawrence*
Paul.Lawrence@pacificalawgroup.com
PACIFICA LAW GROUP LLP
401 Union St., Suite 1600
Seattle, WA 98101-2668
(206) 245-1700

*Attorneys for Plaintiff City of Salem*

*\* Pro Hac Vice application pending*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CITY OF SALEM,<br><br>               Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN in his official capacity as Secretary of the U.S. Department of Homeland Security; the U.S. DEPARTMENT OF HOMELAND SECURITY; ROBERT J. FENTON JR. in his official capacity as Senior Official Performing the Duties of the Administrator of the Federal Emergency Management Agency; and the FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>               Defendants. | Case No. 6:26-cv-01340-MC<br><br>Plaintiff City of Salem's<br>MOTION FOR PRELIMINARY INJUNCTION<br>Pursuant to Fed. R. Civ. P. 65<br>Request for Oral Argument |

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## TABLE OF CONTENTS

LR 7-1 CERTIFICATION ........................................................................................ vii

MOTION ................................................................................................................ vii

MEMORANDUM OF LAW ...................................................................................... 1

I.    BACKGROUND .............................................................................................. 2

   A.   Congressional Funding for Local Emergency Preparedness and Response. ...................... 2

   B.   DHS Attached New Conditions to Local Emergency Preparedness and Response Grant Funding. ............................................................................. 4

      1.   Discrimination Condition ......................................................................... 5

      2.   Executive Order Condition ....................................................................... 7

      3.   Termination for Convenience Condition ................................................... 7

   C.   The Administration Has Confirmed That It Intends to Enforce the New Conditions. ....... 9

   D.   Salem Faces Immediate and Irreparable Harm. ................................................... 11

      1.   Salem's Values, Code, and Policy Conflict with the Challenged Conditions. ............. 11

      2.   Salem's Public Assistance Program Award Is Subject to the Discrimination and Executive Order Conditions. .......................................... 13

      3.   Salem's Building Resilient Infrastructure and Communities Grant Application Is Subject to the Challenged Conditions. .................................. 13

      4.   Salem Declined Fiscal Year 2025 Emergency Management Performance Grant Funds Due to the Challenged Conditions but Intends to Apply Again in Fiscal Years 2026 and 2027 ........................................................................ 14

II.   ARGUMENT ................................................................................................. 16

   A.   Legal Standard. ........................................................................................... 16

   B.   Salem Has Standing. ..................................................................................... 16

   C.   Salem Is Likely to Succeed on the Merits. ....................................................... 17

      1.   The Challenged Conditions Violate Separation of Powers and Are Ultra Vires. ......... 17

      2.   The Challenged Conditions Violate the Spending Clause. ........................................ 21

         a.   The Challenged Conditions Are Ambiguous. ...................................................... 21

         b.   The Challenged Conditions Are Unrelated to the Purpose of the Grants. ................. 26

      3.   The Challenged Conditions Violate the Administrative Procedure Act. ...................... 28

   D.   Salem Will Suffer Irreparable Harm If the Conditions Are Not Enjoined. ....................... 32

   E.   The Equities Weigh in Salem's Favor. .............................................................. 34

III.  CONCLUSION ............................................................................................... 35

CERTIFICATE OF COMPLIANCE ...................................................................... 37

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - i

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

## Cases

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ................................................................................... 32

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ................................................................................... 35

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) ..................................................................................... 16

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006) .................................................................................................. 19

*Bennett v. Spear*,
  520 U.S. 154 (1997) .................................................................................................. 28

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) .................................................................................................. 23

*California v. Bernhardt*,
  472 F. Supp. 3d 573 (N.D. Cal. 2020) ...................................................................... 30

*California v. EPA*,
  72 F.4th 308 (D.C. Cir. 2023) ................................................................................... 30

*City & Cnty. of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ....................................................................... 16, 17, 18

*City & Cnty. of San Francisco v. Trump*,
  779 F. Supp. 3d 1077 (N.D. Cal. 2025) .................................................................... 33

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) .............................................................................................. 18, 21

*City of Chicago v. Noem*,
  No. 1:25-cv-12765, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025) ................................ passim

*City of Evanston v. Barr*,
  412 F. Supp. 3d 873 (N.D. Ill. 2019) ........................................................................ 33

*City of Fresno v. Mullin*,
  No. 26-cv-01535-WHO, 2026 WL 1998576 (N.D. Cal. July 9, 2026) ........................ passim

*City of Fresno v. Turner*,
  No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sep. 23, 2025) .......................... passim

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*City of Los Angeles v. Barr*,
    941 F.3d 931 (9th Cir. 2019) ................................................................................ 21

*City of Los Angeles v. Sessions*,
    No. CV 18-7347-R, 2019 WL 1957966 (C.D. Cal. Feb. 15, 2019) ......................... 17

*City of Los Angeles v. Sessions*,
    No. Cv-17-7215-R, 2018 WL 6071072 (C.D. Cal. Sep. 13, 2018) ......................... 34

*Cnty. of Santa Clara v. Noem*,
    815 F. Supp. 3d 979 (N.D. Cal. 2025) ............................................................. passim

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
    68 F.4th 864 (4th Cir. 2023) ................................................................................ 23

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) .............................................................................................. 16

*Diemert v. City of Seattle*,
    776 F. Supp. 3d 922 (W.D. Wash. 2025) .............................................................. 23

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014) .............................................................................. 34

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) .............................................................................................. 30

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) .............................................................................................. 30

*Freytag v. Comm'r*,
    501 U.S. 868 (1991) .............................................................................................. 18

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ................................................................................ 32

*Illinois v. Fed. Emergency Mgmt. Agency*,
    801 F. Supp. 3d 75 (D.R.I. 2025) ...................................................................... 3, 4

*King Cnty. v. Turner*,
    785 F. Supp. 3d 863 (W.D. Wash. 2025) ........................................................... 1, 29

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) .............................................................................................. 17

*Lotus Vaping Techs., LLC v. FDA*,
    73 F.4th 657 (9th Cir. 2023) ................................................................................ 30

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - iii

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Lujan v. Def. of Wildlife*,
 504 U.S. 555 (1992)................................................................................................. 16

*Maryland v. King*,
 567 U.S. 1301 (2012).............................................................................................. 34

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ................................................................................. 34

*Metro. Transp. Auth. v. Duffy*,
 No. 25-cv-1413 (LJL), 2026 WL 588117 (S.D.N.Y. Mar. 3, 2026)........................ 20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983).................................................................................................. 29

*Nat'l Educ. Ass'n v. United States Dep't of Educ.*,
 779 F. Supp. 3d 149 (D.N.H. 2025)........................................................................ 22

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
 567 U.S. 519 (2012)................................................................................................ 26

*New York v. United States*,
 505 U.S. 144 (1992)................................................................................................ 28

*Ohio v. EPA*,
 603 U.S. 279 (2024)................................................................................................ 29

*Pennhurst State Sch. & Hosp. v. Halderman*,
 451 U.S. 1 (1981)........................................................................................ 21, 24, 26

*PFLAG, Inc. v. Trump*,
 766 F. Supp. 3d 535 (D. Md. 2025)........................................................................ 24

*Planned Parenthood of N.Y.C., Inc. v. United States Dep't of Health & Human Servs.*,
 337 F. Supp. 3d 308 (S.D.N.Y. 2018)..................................................................... 29

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
 789 F. Supp. 3d 716 (N.D. Cal. 2025) .............................................................. 22, 26

*South Dakota v. Dole*,
 483 U.S. 203 (1987)................................................................................... 18, 21, 26

*State ex rel. Becerra v. Sessions*,
 284 F. Supp. 3d 1015 (N.D. Cal. 2018) .................................................................. 29

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
 600 U.S. 181 (2023)................................................................................................ 23

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - iv

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
576 U.S. 519 (2015) .............................................................................................. 23

*Trump v. United States*,
603 U.S. 593 (2024) .............................................................................................. 18

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) .......................................................................................... 6, 24

*Washington v. Fed. Emergency Mgmt. Agency*,
818 F. Supp. 3d 195 (D. Mass. 2025) .................................................................. 14

*West Virginia v. B.P.J.*,
No. 24-43, 2026 WL 1868739 (U.S. 2026) .......................................................... 24

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .................................................................................................. 16

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .............................................................................................. 17

**Statutes**

5 U.S.C. § 706 ................................................................................................. 28, 29

6 U.S.C. § 762 ............................................................................................. 4, 19, 27

31 U.S.C. § 3729 .............................................................................................. 6, 24

42 U.S.C. § 5121 ............................................................................................. 26, 27

42 U.S.C. § 5133 ................................................................................. 3, 14, 18, 26

42 U.S.C. § 5150 .................................................................................................. 27

42 U.S.C. § 5151 .................................................................................................. 27

42 U.S.C. § 5164 .................................................................................................. 18

42 U.S.C. § 5165 .................................................................................................. 19

42 U.S.C. § 5170 .................................................................................................... 3

42 U.S.C. § 5172 ......................................................................................... 3, 18, 26

42 U.S.C. § 5173 .................................................................................................. 18

42 U.S.C. § 5191 .................................................................................................... 3

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - v

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Pub. L. No. 108-7, 117 Stat. 11 ................................................................................ 4

Pub. L. No. 117-58, 135 Stat. 429 ............................................................................ 3

Salem Rev. Code § 8.030.........................................................................................11

Salem Rev. Code ch. 97.....................................................................................passim

Salem Rev. Code § 97.005.......................................................................................11

Salem Rev. Code § 97.010.......................................................................................11

Salem Rev. Code § 97.020.......................................................................................11

Salem Rev. Code § 97.040.......................................................................................11

Salem Rev. Code § 97.060.......................................................................................11

**Regulations**

2 C.F.R. § 1.105 ...................................................................................................... 7

2 C.F.R. § 200.332 ............................................................................................. 5, 17

2 C.F.R. § 200.339 .................................................................................................. 8

2 C.F.R. § 200.340 .............................................................................................. 7, 8

2 C.F.R. § 3002.10...................................................................................................7

28 C.F.R. § 85.5 ................................................................................................... 24

44 C.F.R. pt. 206.................................................................................................. 19

44 C.F.R. § 206.11 ............................................................................................... 27

44 C.F.R. § 206.202 .............................................................................................. 3

Or. Admin. R. § 104-010-0005................................................................................ 9

**Other Authorities**

Guidance for Federal Financial Assistance,
 89 Fed. Reg. 30046 (Apr. 22, 2024) ...................................................................... 8

Guidance for Grants and Agreements,
 85 Fed. Reg. 49506 (Aug. 13, 2020)....................................................................... 8

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - vi

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## LR 7-1 CERTIFICATION

Plaintiff City of Salem's counsel certifies that the parties conferred via telephone conference on July 13, 2026, regarding this Motion and have been unable to resolve the issue.

## MOTION

Plaintiff City of Salem ("Salem") moves the Court under Federal Rule of Civil Procedure 65 for a preliminary injunction against Defendants Markwayne Mullin in his official capacity as Secretary of Homeland Security ("Secretary Mullin"), the United States Department of Homeland Security, the Federal Emergency Management Agency ("FEMA"), and Robert J. Fenton, Jr. in his official capacity as the Senior Official Performing the Duties of the Administrator of FEMA (collectively, "DHS"). Salem respectfully requests that the Court enter a preliminary injunction before August 17, 2026 preventing DHS from:

1.      Imposing, enforcing, or implementing unlawful and unauthorized challenged grant conditions or any materially similar terms or conditions with respect to any federal funds received by or awarded to Salem, directly or indirectly;

2.      Imposing or enforcing any interpretation of federal civil rights statutes against Salem as requiring anything other than compliance with the statutes as they have been enacted by Congress and interpreted by the judiciary; and

3.      Retaliating against Salem for participating in this lawsuit or taking any adverse action based on Salem's participation in this lawsuit.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - vii

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## MEMORANDUM OF LAW

Salem moves for a preliminary injunction preventing DHS from imposing and enforcing unlawful conditions on Salem's disaster preparedness, recovery, and mitigation grants. DHS has conditioned these congressionally authorized funds on Salem's agreement to comply with the Trump Administration's expansive and legally unsupported reinterpretation of federal civil rights laws; refrain from "advanc[ing] or promot[ing]" diversity, equity, inclusion, and accessibility ("DEI" or "DEIA") or so-called "gender ideology";[1] comply with sweeping present and future executive orders unrelated to the grants; and accept DHS's claimed authority to terminate awards whenever they no longer serve the agency's shifting political priorities.

Congress did not authorize any of the challenged conditions. They violate the separation of powers, are ultra vires, exceed the limits of the Spending Clause, and are arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act ("APA"). Federal courts across the country have consistently enjoined the same and materially similar conditions. *See, e.g.*, *City of Fresno v. Mullin*, No. 26-cv-01535-WHO, 2026 WL 1998576, at *1, *39–40 (N.D. Cal. July 9, 2026) (preliminarily enjoining DHS conditions); *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1023–43 (N.D. Cal. 2025) (similar), *appeal docketed*, No. 26-402 (9th Cir. Jan. 20, 2026); *City of Chicago v. Noem*, No. 1:25-cv-12765, 2025 WL 3251222, at *1–2, *10–11 (N.D. Ill. Nov. 21, 2025) (similar), *appeal docketed*, No. 26-1103 (7th Cir. Jan. 21, 2026); *King Cnty. v. Turner*, 785 F. Supp. 3d 863, 874–75, 893–94 (W.D. Wash. 2025) (enjoining similar conditions in Departments of Transportation and Housing and Urban Development grants), *appeal docketed*, No. 25-3664 (9th Cir. June 10, 2025); *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL

---

[1] *See infra* Section I.B.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 1

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

2721390, at *1, *6–19 (N.D. Cal. Sep. 23, 2025) (similar), *appeal docketed*, No. 25-7378 (9th Cir. Nov. 24, 2025). The Court should do the same here.

Salem has already been awarded more than $1 million in DHS funding to restore critical infrastructure damaged by December 2025 flooding and has applied for approximately $13.2 million to replace an aging bridge before the next disaster strikes. Salem must either accept the new conditions or forgo millions of dollars Congress appropriated for disaster recovery and mitigation. But those conditions conflict with Salem's values and legal obligations—enshrined in its code, policies, and programs—to promote fairness, diversity, and inclusion for all regardless of race, ethnicity, sex, sexual orientation, or gender identity, including members of its LGBTQIA+ community. Indeed, earlier this year, Salem was forced to decline an emergency preparedness grant due to the challenged conditions. Salem had received that grant annually for years and intends to apply again this year.

Now, Salem must decide by **August 17, 2026** whether to execute a DHS grant agreement containing the challenged conditions. Without preliminary relief, Salem will be forced to forgo this funding Congress appropriated to protect communities like Salem from floods, earthquakes, and other natural disasters. Because Salem is likely to succeed on the merits, faces imminent and irreparable harm, and the equities and public interest overwhelmingly favor preserving Congress's disaster relief programs as Congress enacted them, the Court should preliminarily enjoin DHS from imposing and enforcing the challenged conditions against Salem.

## I.   BACKGROUND

### A. Congressional Funding for Local Emergency Preparedness and Response.

For decades, Congress has appropriated billions of dollars to help state and local governments prepare for, respond to, and recover from natural disasters and emergencies. *See*

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 2

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 80 (D.R.I. 2025), *appeal docketed*, No. 25-2131 (1st Cir. Dec. 1, 2025). Beginning with the Disaster Relief Act of 1950 and later codifying the modern framework in the Robert T. Stafford Disaster Relief and Emergency Assistance Act, Congress has established a longstanding system of federal disaster assistance. *See id*. Although DHS's programs differ in purpose and scope, each reflects Congress's judgment that state and local governments need stable federal funding to protect lives, infrastructure, and essential services.

This Motion concerns three DHS grant programs: the Public Assistance ("PA") Program, Building Resilient Infrastructure and Communities ("BRIC") Program, and Emergency Management Performance Grant ("EMPG") Program.

The PA Program provides grants to repair, restore, reconstruct, or replace public facilities damaged by major disasters. 42 U.S.C. § 5172(a). DHS awards funds to states, which distribute funds to eligible local governments as subrecipients. *See* 44 C.F.R. § 206.202. Funding is available only after a presidential major disaster or emergency declaration. *See* 42 U.S.C. §§ 5170, 5191.

The BRIC Program funds pre-disaster mitigation projects that reduce the loss of life and property from natural hazards. 42 U.S.C. § 5133(b). Funded through appropriations and the Disaster Relief Fund, it is DHS's largest pre-disaster mitigation program. *See* Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429, 1387 (2021); 42 U.S.C. § 5133(i). Congress directed DHS to award BRIC grants under statutory criteria prioritizing cost-effective projects that measurably reduce disaster risk. *See* 42 U.S.C. § 5133(g). DHS solicits applications annually through a Notice of Funding Opportunity ("NOFO"), and preparing a competitive BRIC application typically requires months or years of engineering, environmental review, feasibility studies, modeling, and public coordination. *See* Decl. of Brian D. Martin ("Martin Decl.") ¶ 55.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 3

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The EMPG Program supports state and local governments' emergency management by funding planning, organization, equipment, training, exercises, and personnel to prepare for hazards, including natural disasters. *See* 6 U.S.C. § 762(b); Request for Judicial Notice ("RJN"), Ex. 7 at 7, 12. Congress has funded EMPG since 2003, *see* Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11, 516, and state allocations are distributed by statutory formula, with local governments applying through their states as subrecipients. *See* 6 U.S.C. § 762(d).

### B. DHS Attached New Conditions to Local Emergency Preparedness and Response Grant Funding.

Beginning in January 2025, President Trump issued executive orders directing agencies to condition federal funding on compliance with new Administration policies unrelated to the grant programs' statutory purposes.[2]

One executive order, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," directs agencies to include in every grant a certification that the recipient "does not operate any programs promoting DEI" that violate federal civil rights laws. Exec. Order No. 14173 § 3(b)(iv)(B), 90 Fed. Reg. 8633 (Jan. 21, 2025) ("DEI Order"). Another, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," directs agencies to "take all necessary steps" to "ensure grant funds do not promote gender ideology." Exec. Order No. 14168 § 3(e), (g), 90 Fed. Reg. 8615 (Jan. 20, 2025) ("Gender Ideology

---

[2] Salem's complaint also sets forth DHS's unlawful attempt to force grant recipients to comply with civil immigration conditions contained in DHS's standard terms. Dkt. #1 ¶¶ 90–91, 97–98. At this time, Salem is not moving for relief from those conditions because they were already vacated as arbitrary and capricious and unconstitutional in *Illinois*, 801 F. Supp. 3d at 92–98. Oregon is a plaintiff in the *Illinois* case and because the grants at issue pass through to local governments, the injunction in *Illinois* precludes DHS's enforcement of the immigration conditions as to Salem's DHS grants. Salem reserves its rights to challenge those conditions to the extent DHS attempts to impose them (or any materially similar conditions) in the future.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 4

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Order"). It states: "'Gender ideology' replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa . . . ." *Id.* § 2(f). Additional executive orders contain similar directives.[3]

DHS implemented these directives by revising the standard terms and conditions ("Standard Terms") governing its grant programs. The FY25 Standard Terms added two new conditions: the Discrimination Condition and Executive Order Condition. RJN, Ex. 1 §§ C.XVII, C.XXXI. The FY26 Standard Terms included those two new conditions and added a third authorizing DHS to terminate awards "for convenience." *Id.*, Ex. 2 at 10–11, 15–17. DHS likewise incorporated the same or materially similar conditions into the current BRIC NOFO and the FY25 and FY26 EMPG NOFOs. *Id.*, Ex. 3 at 36, 41, Ex. 7 at 44, 48, Ex. 8 at 27–28.[4] Because the grant programs are administered through state agencies, these conditions pass through to local governments, including Salem. *See* 2 C.F.R. § 200.332(b)(2).

### 1. Discrimination Condition.

The Discrimination Condition requires recipients to certify they "do not, and will not, . . . operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws." RJN, Ex. 1 § C.XVII(2)(a)(i), Ex. 2 at

---

[3] *See, e.g.*, Exec. Order No. 14332 § 4(b), 90 Fed. Reg. 38929 (Aug. 7, 2025) ("Grantmaking Order") (prohibiting agencies from awarding discretionary grants that "fund, promote, encourage, subsidize, or facilitate . . . denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic" or "promote anti-American values"); Exec. Order No. 14151 § 2(b), 90 Fed. Reg. 8339 (Jan. 20, 2025) (directing agencies to terminate "all . . . 'equity-related' grants"); Exec. Order No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025) (revoking President Biden's executive orders relating to diversity, equity, and gender identity).

[4] The Challenged Conditions vary slightly across these Standard Terms and NOFOs. The language at issue in each document is set forth in full in the Appendix to the Proposed Preliminary Injunction.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 5

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

10. The Standard Terms define "DEI" only as "diversity, equity, and inclusion" and "DEIA" as "diversity, equity, inclusion and accessibility." *Id.*, Ex. 1 § C.XVII(1)(a)–(b). They define "discriminatory equity ideology" by incorporating an unrelated executive order concerning K–12 education that identifies beliefs the Administration disfavors. *Id*. § C.XVII(1)(c) (citing Exec. Order No. 14190 § 2(b), 90 Fed. Reg. 8853 (Jan. 29, 2025), which defines this term as "an ideology that treats individuals as members of preferred or disfavored groups, rather than as individuals, and minimizes agency, merit, and capability in favor of immoral generalizations," with several listed examples).

DHS recipients have long been required to comply with federal civil rights statutes. Those conditions ("Civil Rights Conditions")[5] simply require compliance with laws enacted by Congress as interpreted by the courts. The new Discrimination Condition goes further, requiring recipients to certify compliance with undefined concepts in executive orders and reserving to the federal government authority to determine whether those concepts have been violated without regard to court decisions interpreting those statutes.

The Discrimination Condition also requires recipients to agree that "compliance in all respects with all applicable Federal anti-discrimination laws is material to the [federal] government's payment decisions" for purposes of the False Claims Act, 31 U.S.C. §§ 3729 et seq. RJN, Ex. 2 at 10; *see also id.*, Ex. 1 § C.XVII. False Claims Act liability attaches only if an alleged misrepresentation is material to the federal government's payment decision. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016). If the Secretary

---

[5] *See, e.g.*, RJN, Ex. 1 §§ C.III (Age Discrimination Act of 1975), C.IV (Americans with Disabilities Act of 1990), C.VII (Civil Rights Act of 1964, Title VI), C.VIII (Civil Rights Act of 1968), C.XIV (Title IX), C.XVI (Equal Treatment of Faith-Based Organizations), C.XXIV (Civil Rights Act of 1964, Title VI), C.XXXIII (Rehabilitation Act of 1973); Ex. 2 at 4, 9, 13.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 6

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

determines that a recipient violated the Discrimination Condition, the Standard Terms grant DHS authority to suspend payments, terminate an award, and seek repayment of all federal funds. RJN, Ex. 1 § C.XVII(3), Ex. 2 at 10.

## 2. Executive Order Condition.

The Executive Order Condition in the FY25 Standard Terms requires recipients to "comply with the requirements of Presidential Executive Orders related to grants," the full text of which are incorporated by reference. *Id.*, Ex. 1 § C.XXXI. The FY26 Standard Terms expand that requirement to include compliance with "the requirements and actions of Presidential Executive Orders related to grants." *Id.*, Ex. 2 at 17.

The incorporated executive orders appear to include, among others, the Gender Ideology and DEI Orders. Those orders direct agencies to ensure federal funds do not "promote gender ideology" and require recipients to certify they do not operate DEI programs that, in the Administration's view, violate federal civil rights laws. Gender Ideology Order § 3(e), (g); DEI Order § 3(b)(iv).

## 3. Termination for Convenience Condition.

The FY26 Standard Terms add a new condition authorizing DHS to terminate a federal award, in whole or in part, "[f]or convenience," including whenever DHS concludes an award "no longer advances agency priorities or the national interest." RJN, Ex. 2 at 16. This Termination for Convenience Condition contains no meaningful standards governing the exercise of that authority. The FY26 Standard Terms cite two sources of authority: (1) the Uniform Guidance, 2 C.F.R. § 200.340, and (2) the Grantmaking Order (Executive Order 14332). *Id.* at 15–16.

First, OMB's Uniform Guidance governs federal grants only to the extent agencies adopt it by regulation. 2 C.F.R. § 1.105(c). DHS did so in 2014. *Id*. § 3002.10. At that time, the Uniform

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Guidance permitted grant termination only for noncompliance, for cause, by mutual agreement, or at the recipient's request. 2 C.F.R. § 200.339(a)(1)–(4) (2013). It did not authorize termination for "convenience" or because an award no longer advanced agency priorities or the national interest.

The current regulation, 2 C.F.R. § 200.340(a), identifies four circumstances in which a federal award may be terminated. Section 200.340(a)(4) permits termination, pursuant to the terms and conditions of the award and "to the extent authorized by law," if an award "no longer **effectuates** the program goals or agency priorities." (emphasis added).

During rulemaking, OMB explained that "[t]he intent of this change is to ensure that Federal awarding agencies prioritize ongoing support to Federal awards that meet program goals." Guidance for Grants and Agreements, 85 Fed. Reg. 49506, 49507 (Aug. 13, 2020). It stated termination could be appropriate where "additional evidence reveals that a specific award objective is ineffective at achieving program goals," or where "additional evidence . . . cause[s] the Federal awarding agency to significantly question the feasibility of the intended objective of the award." *Id*. at 49507–08. OMB clarified, however, that agencies "are not able to terminate grants arbitrarily." *Id*. at 49509. In subsequent revisions, OMB "underscore[ed] the need for agencies and pass-through entities to clearly and unambiguously communicate termination conditions in the terms and conditions of the award." Guidance for Federal Financial Assistance, 89 Fed. Reg. 30046, 30089 (Apr. 22, 2024). OMB has never suggested a grant could be terminated even though the grant was continuing to serve the very goals for which the funds were initially awarded, simply because the agency's priorities shifted midway through the grant term.

Second, the Grantmaking Order directs agencies to insert termination for convenience clauses into new and existing awards "to the maximum extent permitted by law." Grantmaking Order § 6(b). The order states that it applies only to "discretionary" grant funds—not statutory

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 8

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

entitlement or formula grant programs or disaster recovery grants. *Id.* §§ 6(b), 2(d). The Termination for Convenience Condition, however, contains no limitation to the "extent permitted by law," nor is it limited to discretionary grants. RJN, Ex. 2 at 16.

A materially similar Condition permitting termination "for convenience" is included in the FY26 EMPG NOFO, even though EMPG is awarded based on statutory formulae. *See id.*, Ex. 8 at 27; Or. Admin. R. § 104-010-0005 (2023). And the current BRIC NOFO and FY25 EMPG NOFO similarly allow termination where the agency changes the program's priorities midstream and determines the award will not achieve those updated priorities. RJN, Ex. 3 at 41, Ex. 7 at 48.

Thus, PA, BRIC, and EMPG recipients, including Salem, remain at risk that DHS will terminate congressionally authorized grants based on shifting policy priorities rather than the programs' statutory purposes or the recipients' performance.

### C. The Administration Has Confirmed That It Intends to Enforce the New Conditions.

The Discrimination, Executive Order, and Termination for Convenience Conditions (collectively, the "Challenged Conditions") are not empty threats. Since January 2025, the Administration has repeatedly announced that it intends to use these new grant conditions to investigate recipients, withhold federal funding, and pursue civil and criminal penalties against recipients whose policies conflict with the Administration's views on DEI and gender identity.

In a May 2025 memo, former Deputy Attorney General Todd Blanche announced a "Civil Rights Fraud Initiative" that will "utilize the False Claims Act to investigate and, as appropriate, pursue claims against any recipient of federal funds that knowingly violates federal civil rights laws." RJN, Ex. 10 at 2. The memo asserts the False Claims Act "is implicated whenever federal-funding recipients . . . certify compliance with civil rights laws" while engaging in DEI programs "that assign benefits or burdens on race, ethnicity, or national origin." *Id*. at 1. The memo states

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

that the Department of Justice's Civil Fraud Section, Civil Rights Division, and Criminal Division will coordinate enforcement. *Id.* at 2. DOJ's Civil Division later asserted that it would dedicate "all available resources" to "aggressively" pursue False Claims Act violations against recipients that "knowingly" violate civil rights laws. *Id.*, Ex. 11 at 1. These announcements confirm the new certifications will serve as the basis for False Claims Act investigations and litigation.

Meanwhile, Administration officials have announced and promoted reinterpretations of federal civil rights law that depart from long-held understandings. In a July 29, 2025 memorandum, former Attorney General Pamela Bondi provided "guidance" concerning various practices that would be viewed as constituting unlawful discrimination. *Id.*, Ex. 12 at 1 ("Discrimination Guidance Memo"). For instance, the Memo states that "allow[ing] males, including those self-identifying as 'women,' to access single-sex spaces designed for females . . . undermine[s] the privacy, safety, and equal opportunity of women and girls." *Id.* at 6. The Memo directs grant recipients to "affirm sex-based boundaries rooted in biological differences" to "ensure compliance with federal law." *Id.* Thereafter, DHS distributed a notice that "advise[d] recipients and subrecipients to review and adhere to the Attorney General's" Discrimination Guidance Memo. *Id.*, Ex. 16 at 7.

More recently, DOJ and other agencies have initiated investigations and withheld federal funding based on grant recipients' alleged DEI and gender identity policies. *See*, *e.g.*, *id.*, Exs. 13 (DOJ letter opening Title VII investigation of the City of Chicago based on the Mayor's statements concerning the racial composition of his senior staff), 14 (similar concerning City of Austin's employment practices), 15 (similar concerning University of California's employment practices). There likely would be even more examples but for the many injunctions issued against enforcement of similar grant conditions. *See supra* at 1–2 (citing decisions).

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 10

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Against this backdrop, Salem cannot reasonably treat the Challenged Conditions as routine assurances of compliance with existing law. The Administration has demonstrated its intent to enforce the Conditions according to its own evolving reinterpretations of federal civil rights requirements and to invoke the False Claims Act and other enforcement mechanisms against recipients that do not conform to those interpretations.

### D. Salem Faces Immediate and Irreparable Harm.

#### 1. Salem's Values, Code, and Policy Conflict with the Challenged Conditions.

Salem is Oregon's state capital, and its approximately 183,000 residents reflect a wide range of experiences, identities, and traditions, contributing to a vibrant and diverse community that is welcoming to all. Martin Decl. ¶ 5. Salem's vision is to be a leading capital city that sets the standard for safety, livability, and sustainability—fueling a dynamic economy and providing all residents equitable access to opportunities, services, and resources. *Id.* ¶ 10. Salem actively addresses systemic barriers and prioritizes policies that promote fairness, diversity, and socioeconomic inclusion. *Id.* ¶ 12. These values and commitments are enshrined in Salem's municipal code ("Code"), *see* Salem Rev. Code ch. 97, as well as its policies, programs, and initiatives. *See* Martin Decl. ¶¶ 12–14. In 2002, Salem became one of only 40 cities in the United States to prohibit discrimination based on sexual orientation and gender identity in employment, housing, and public accommodations, "regardless of whether [an individual's gender-related] identity, appearance, expression or behavior differs from that associated with the gender assigned to the individual at birth." Salem Rev. Code §§ 97.005, .010, .020, .040, .060. The Code also establishes the Human Rights Commission to act on discrimination complaints and recommend solutions to specific problems of prejudice or discrimination in Salem. *Id.* § 8.030. The Commission has established the LGBTQIA+ Intersectional Committee to focus on the rights of

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 11

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

LGBTQIA+ individuals in Salem's community. Martin Decl. ¶ 15.

Like local governments across the country, Salem depends on DHS grants for emergency preparedness and recovery, including repairing damaged public facilities and reducing risks posed by future disasters. *Id.* ¶ 8. Salem has already been awarded more than $1 million in PA funding and has applied for approximately $13.2 million in BRIC funding. *Id*. ¶¶ 47, 56. The Challenged Conditions place that funding at immediate risk. Salem must either agree to the Challenged Conditions—contrary to its own values, Code, policies, and programs—or forgo federal funding. In fact, Salem was forced to decline FY25 EMPG funding because it could not agree to these Conditions. Declaration of Joseph Hutchinson ("Hutchinson Decl.") ¶¶ 33–36. And even if Salem could accept the Conditions, it would still face the continuing risk that DHS will suspend payments, seek repayment of grant funds, pursue False Claims Act liability, or terminate an award because it no longer advances the Administration's changing priorities.

The uncertainty created by the Challenged Conditions has immediate operational and financial consequences. Salem must plan, budget, obtain necessary permits, and contract for major infrastructure projects months or years in advance. Martin Decl. ¶ 49. Delays in receiving federal funds increase project costs, disrupt long-term capital planning, and force Salem to divert limited local resources to projects and programs Congress intended DHS to support. Declaration of Kali Leinenbach ("Leinenbach Decl.") ¶¶ 10–16. Deferring capital construction projects makes Salem less resilient by increasing long-term costs due to interim repairs and allowing facilities to deteriorate. *Id.* ¶ 14. Because of the Challenged Conditions, Salem will be forced to divert money from its already-strained General Fund, draw down contingency appropriations or utility rate revenue, or incur additional debt. *Id.* ¶¶ 9–14. Uncertainty also leaves Salem more vulnerable to inflation and potential loss of public trust that could take decades to rebuild. *Id.* ¶¶ 15–16.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 12

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### 2. Salem's Public Assistance Program Award Is Subject to the Discrimination and Executive Order Conditions.

In December 2025, severe rainfall, high winds, and an atmospheric river caused catastrophic flooding, landslides, and mudslides in Oregon. Martin Decl. ¶ 34. The flooding severely damaged culverts and a roadway providing access to the West Salem Pump Station, compromising infrastructure necessary for Salem's wastewater treatment system. *Id*. ¶¶ 38–40.

The President declared the event a major disaster, making PA grant funding available. RJN, Ex. 9. Salem was awarded more than $1 million to replace the damaged culverts and roadway. Martin Decl. ¶¶ 45–47; *id*., Exs. 1–3. Salem cannot receive those funds unless it executes a grant agreement incorporating the FY25 Standard Terms, including the Discrimination and Executive Order Conditions (as well as the standard Civil Rights Conditions). *Id*. ¶ 46.

The resulting harm is immediate. To stay on schedule, Salem must decide by August 17, 2026 whether to accept this PA funding. *Id*. ¶ 47. Delaying the project will increase the likelihood that Salem will miss the environmentally required construction window, postponing work until a later season and increasing both costs and the risk of additional damage. *Id.* ¶ 48.

### 3. Salem's Building Resilient Infrastructure and Communities Grant Application Is Subject to the Challenged Conditions.

Salem's primary drinking water treatment facility is located on an island accessible only by a bridge constructed in 1965. *Id*. ¶ 51. The bridge does not satisfy modern standards for seismic resilience or flood passage. *Id*. ¶ 52. It provides the only access for treatment plant personnel, emergency responders, equipment, and essential supplies. *Id*. Replacing the bridge is expected to cost approximately $17.6 million. *Id.* ¶ 55. Salem has applied for approximately $13.2 million in BRIC funding to complete the project. *Id*. ¶ 56.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 13

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Salem intended to seek funding under the FY24 BRIC NOFO, which did not contain the Challenged Conditions. *Id*. ¶ 56. DHS, however, attempted to terminate the BRIC Program altogether before accepting applications. *Id*. That action was enjoined in 2025, *see Washington v. Fed. Emergency Mgmt. Agency*, 818 F. Supp. 3d 195, 204–07 (D. Mass. 2025), after which DHS issued a new BRIC NOFO. RJN, Ex. 3. This NOFO incorporates the FY25 Standard Terms, including the Discrimination and Executive Order Conditions, and provides that any resulting award will be governed by the Standard Terms in effect when the award is issued. *Id.* at 36. It also contains a Termination for Convenience Condition, as noted above. *Id*. at 41. Accordingly, if Salem's application is approved, its funding will be subject to the Challenged Conditions.

After filing this lawsuit, Salem submitted its BRIC application for the bridge replacement project. Martin Decl. ¶ 50. Based on the statutory criteria, the project is a strong candidate because it would substantially reduce the risk that a natural disaster will disrupt Salem's drinking water infrastructure. *See id.* ¶¶ 51–53; 42 U.S.C. § 5133(g).

The Challenged Conditions nevertheless threaten to delay or jeopardize the project. Every delay increases the risk that a major earthquake or other natural disaster will occur before the aged bridge is replaced, potentially interrupting access to Salem's only water treatment facility when emergency response is most critical. *See id*. ¶¶ 51–53, 60.

### 4. Salem Declined Fiscal Year 2025 Emergency Management Performance Grant Funds Due to the Challenged Conditions but Intends to Apply Again in Fiscal Years 2026 and 2027.

Salem applied for and received EMPG funding as a subrecipient annually from FY22 through FY24 for its emergency management program. Hutchinson Decl. ¶¶ 26–29. EMPG grants have covered nearly half the program's annual budget. Leinenbach Decl. ¶ 10. Neither the

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 14

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

applicable NOFOs, nor the grant agreements, contained the Challenged Conditions. Hutchinson Decl. ¶¶ 26–29.

That changed after President Trump took office. The FY25 EMPG NOFO provided that any resulting award would be governed by the Standard Terms in effect when the award is issued. RJN, Ex. 7 at 44. At that time, the FY25 Standard Terms (including the Discrimination and Executive Order Conditions) were in effect. *Id.*, Ex. 1. The FY25 EMPG NOFO also contained a Termination for Convenience Condition, as noted above. *Id.*, Ex. 7 at 47.

Salem requested FY25 EMPG funding through Oregon and was awarded $80,945.50, again for emergency management program costs. *Id.* ¶ 31, Ex. 5. However, Salem declined the award because, to receive the funds, it would have been required to sign a grant agreement incorporating the Challenged Conditions. *Id.* ¶ 33–34.

Salem intends to continue applying for EMPG funding, including the upcoming FY26 and FY27 grant cycles. *Id.* ¶ 37. Salem has already submitted its intent to apply for FY26 EMPG funding and expects that it will need to submit its application in August or September 2026. *Id.* ¶ 38. But the recently issued FY26 EMPG NOFO contains the Challenged Conditions, RJN, Ex. 8 at 27–28 (incorporating Standard Terms in effect when the award is issued and containing a Termination for Convenience Condition), and Salem expects that future EMPG NOFOs will do so as well. Hutchinson Decl. ¶ 39.

Absent relief from this Court, Salem will be forced once again to forgo this statutory funding. *Id.* This would mean additional depletion of local funds at the expense of other priorities or, alternatively, reducing or eliminating the emergency management program, leaving the community less prepared to respond to disasters and other emergencies. Leinenbach Decl. ¶ 10.

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## II.    ARGUMENT

### A.  Legal Standard.

A preliminary injunction is warranted where the moving party establishes (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All of these factors strongly favor Salem.

### B.  Salem Has Standing.

A plaintiff has Article III standing if (1) the plaintiff has suffered an injury-in-fact or faces an imminent injury; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable decision would likely redress the injury. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992). "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019) ("los[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III"); *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022) ("States have standing when an allegedly unconstitutional funding offer is made to them, and they do not need to first violate a condition of an allegedly unconstitutional contract . . . .").

Salem easily satisfies these requirements. Salem has already been awarded more than $1 million in PA funding but cannot access those funds unless it accepts the Discrimination and Executive Order Conditions. Martin Decl. ¶¶ 47, 56. Salem has also applied for approximately $13.2 million in BRIC funding under a NOFO that incorporates all the Challenged Conditions. *Id*. ¶¶ 50, 56, 58–60. And Salem was forced to decline EMPG funding because of the Challenged Conditions but intends to continue applying for and receiving that funding in upcoming grant

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 16

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

cycles as soon as August 2026. Hutchinson Decl. ¶¶ 31–38. Although DHS awards PA, BRIC, and EMPG funds to the states, the Challenged Conditions expressly apply to subrecipients, including Salem. RJN., Ex. 1 at 1; Ex. 2 at 2. *See also* 2 C.F.R. § 200.332(b)(2). Salem thus faces the imminent choice of either accepting Challenged Conditions (which it cannot do consistent with its Code) or forgoing millions of dollars for critical capital projects and emergency management. That injury is directly traceable to DHS's imposition of the Conditions and would be redressed by an injunction prohibiting their enforcement. *See Santa Clara*, 815 F. Supp. 3d at 1019–21 (subrecipient municipalities had standing to challenge new DHS conditions); *City of Fresno*, 2026 WL 1998576, at *30–32 (same); *City of Chicago*, 2025 WL 3251222, at *3–4 (same).

### C.  Salem Is Likely to Succeed on the Merits.

#### 1.  The Challenged Conditions Violate Separation of Powers and Are Ultra Vires.

"[U]nless and until Congress confers power upon" them, agencies have "literally . . . no power to act." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Here, no statute gives DHS the power to impose conditions on federal grants remotely approaching those at issue. Rather than implement Congress's will, DHS attempts to condition congressionally appropriated funds on compliance with the President's policy priorities as expressed in executive orders. But the President lacks "'his own constitutional powers'" to condition federal funds. *San Francisco*, 897 F.3d at 1234 (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)). DHS's actions therefore usurp Congress's "power of the purse," violate bedrock separation of powers principles, and are ultra vires. *Id.* at 1231; *see also City of Los Angeles v. Sessions*, No. CV 18-7347-R, 2019 WL 1957966, at *3–5 (C.D. Cal. Feb. 15, 2019) (ruling DOJ's imposition of grant conditions not authorized by Congress was ultra vires and a separation of powers violation), *appeal dismissed*, No. 20-55926, 2021 WL 837292 (9th Cir. Jan. 14, 2021).

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 17

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The separation of powers represents perhaps the central tenet of our Constitution. *See, e.g.*, *Freytag v. Comm'r*, 501 U.S. 868, 870 (1991) ("The leading Framers of our Constitution viewed the principle of separation of powers as the central guarantee of a just government."); *Trump v. United States*, 603 U.S. 593, 637–38 (2024) (separation of powers is "undoubtedly carved into the Constitution's text"). The Constitution "exclusively grants the power of the purse to Congress, not the President." *San Francisco*, 897 F.3d at 1231. Under separation of powers, the Executive Branch may not "claim[] for itself Congress's exclusive spending power" or "coopt Congress's power to legislate." *Id.* at 1234. While "Congress may attach conditions on the receipt of federal funds," the Executive may not do so without Congress's permission. *South Dakota v. Dole*, 483 U.S. 203, 206 (1987); *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (recognizing agencies are "charged with administering congressional statutes," which means that "[b]oth their power to act and how they are to act is authoritatively prescribed by Congress").

In establishing the PA, BRIC, and EMPG Programs and appropriating funds, Congress has not authorized DHS to impose conditions prohibiting all forms of DEI and gender inclusivity or requiring adherence to current and future executive orders unrelated to the purpose of the grant. The grant-authorizing statutes set forth the purposes of the grants, specify criteria for awarding funds, and permit the President and DHS to issue certain types of guidance. *See, e.g.*, 42 U.S.C. § 5133(b) (describing purpose of BRIC Program); 42 U.S.C. § 5133(g) (directing the President, in determining whether to award BRIC funding, to take into account specified criteria related to hazard mitigation/response as well as "such other criteria as the President establishes in consultation with State and local governments"); 42 U.S.C. §§ 5172(a), 5173(a) (describing purposes of PA funding); 42 U.S.C. §§ 5172(e)(5), 5173(c) (requiring the President, directly or through the FEMA Administrator, to issue rules addressing various aspects of PA Program); 42

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 18

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

U.S.C. § 5164 (authorizing rulemaking more generally by the President directly or through a designated agency); 42 U.S.C. § 5165(a)(1) (requiring that disaster grant recipients carry out any repair or construction "in accordance with applicable standards of safety, decency, and sanitation and in conformity with applicable codes, specifications, and standards"); 6 U.S.C. § 762(b) (describing purpose of EMPG Program). But none of those provisions remotely relate to, let alone delegate authority to impose, the Challenged Conditions. And they certainly do not give DHS carte blanche to impose the President's political priorities on grant recipients. *See Santa Clara*, 815 F. Supp. 3d at 1028 ("[DHS is] conditioning plaintiffs' receipt of appropriated funds on compliance with the President's political agenda, even though Congress has not authorized [DHS] to leverage federal funding for that agenda, to usurp Congress's power of the purse and violate bedrock separation of powers principles." (cleaned up)); *City of Chicago*, 2025 WL 3251222, at *7 ("None of the enabling acts for the [DHS] grants . . . authorize conditioning funds on a recipient's DEI policies" and "[t]here is also no freestanding statute that conditions the award of federal funds on refraining from DEI programming or on compliance with all federal anti-discrimination law"). Thus, no plausible reading of the authorizing statutes "unambiguously" authorizes the Challenged Conditions. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

DHS's regulations confirm the point. The regulations set forth procedures for presidential disaster declarations, identify available forms of assistance and eligibility criteria, and establish grant administration procedures. *See generally* 44 C.F.R. pt. 206. They track the statutory language or relate closely to program administration; they in no way purport to authorize the Challenged Conditions.

The Discrimination Condition's new grant of power to DHS to suspend or terminate funding if the Secretary determines a recipient violated that Condition exacerbates the separation

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 19

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

of powers problem. *See* RJN, Ex. 1 § C.XVII(3); Ex. 2 at 11. Grant recipients have long been required to certify compliance with the Civil Rights Conditions. But allowing the Secretary to control, without congressional direction, funds that Congress appropriated for a specific purpose based on the Administration's reinterpretation of federal civil rights law as applied to DEI and gender identity arrogates to the Executive powers the Constitution reserves to Congress and the Judiciary: to enact statutes and interpret them.

Likewise, Congress has not authorized DHS to unilaterally terminate grants for "convenience," including for failure to further the agency's own view of "the national interest," or where DHS asserts new, previously unannounced "priorities" post-award. Where Congress has appropriated funds and directed that they be spent on a particular objective, an agency cannot substitute its own policy objectives and terminate already-awarded grants on grounds of "convenience." *See Metro. Transp. Auth. v. Duffy*, No. 25-cv-1413 (LJL), 2026 WL 588117, at *56–58 (S.D.N.Y. Mar. 3, 2026) (agency not authorized to terminate grant at will where authorizing statute did not provide such authority), *appeal docketed*, No. 26-1213 (2d Cir. May 1, 2026). By requiring grant recipients to agree to the Termination for Convenience Condition, DHS is unilaterally seizing authority to terminate funding at will without congressional authorization. In allowing DHS to substitute its own "agency priorities" for the objectives Congress prioritized when appropriating the funds—and thus, for example, terminate Salem's grants even where Congress has directed the funds to be spent on particular disaster recovery or mitigation programs—the Termination for Convenience Condition effectively authorizes impoundment of appropriated funds in violation of separation of powers.

In sum, Congress authorized DHS to administer the PA, BRIC, and EMPG Programs **subject to the limits Congress enacted**. Nothing in those statutes authorizes the Discrimination,

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 20

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Executive Order, or Termination for Convenience Conditions. Salem is therefore likely to succeed in showing that DHS acted beyond its statutory authority and, in doing so, violated the separation of powers. For the same reasons, Salem is also likely to succeed on its ultra vires claim. *See City of Arlington*, 569 U.S. at 297 (when agencies "act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires"); *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency's imposition of grant conditions without statutory authority was "ultra vires").

### 2.  The Challenged Conditions Violate the Spending Clause.

Even if Congress authorized imposition of the Challenged Conditions (it did not), those Conditions are still unlawful because they exceed constitutional limits on the spending power. Grant conditions generally must be unambiguous, i.e., provide fair notice of conditions that apply to federal funds, and relate to the grant program's subject matter. *See Dole*, 483 U.S. at 207–08; *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The Challenged Conditions fail both requirements.[6]

#### a.  The Challenged Conditions Are Ambiguous.

"[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. The Challenged Conditions are so vague, ambiguous, and open-ended that Salem cannot determine what conduct is prohibited or when DHS may terminate its grants.

The Discrimination Condition illustrates the problem. It fails to provide clear standards of conduct or standards for enforcement. It does not define "DEI" or "DEIA" beyond spelling out the acronyms. Nor does it define what it means to "advance" or "promote" DEI, DEIA, or

---

[6] The Challenged Conditions also violate the spending power's "independent constitutional bar" rule, *Dole*, 483 U.S. at 210, including by requiring Salem to violate the First Amendment rights of affiliated third parties such as contractors and subcontractors. *See* Dkt. #1, ¶¶ 127–29.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 21

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"discriminatory equity ideology." Courts considering materially similar conditions have repeatedly concluded these terms are too vague to provide meaningful notice of what grant recipients may or may not do. *See, e.g.*, *Nat'l Educ. Ass'n v. United States Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025) ("DEI as a concept is broad: one can imagine a wide range of viewpoints on what the values of diversity, equity, and inclusion mean when describing a program or practice."); *San Francisco Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 746, 749 (N.D. Cal. 2025) ("DEI" and "equity" restrictions "are rife with vagueness and ambiguity, leaving grantees to speculate what is proscribed and what is permitted" and "[o]ur sister courts concur that analogous anti-DEI and anti-equity or equity-related conditions related to President Trump's executive orders are likely too ill-defined to be enforced"); *Santa Clara*, 815 F. Supp. 3d at 1034 (similar with respect to Discrimination Condition in DHS's FY25 Standard Terms); *City of Fresno*, 2026 WL 1998576, at *10, *24–25 (similar); *City of Fresno*, 2025 WL 2721390, at *16-17 (similar).

The Discrimination Condition is even less clear because it prohibits "programs that advance or promote DEI, DEIA, or discriminatory equity ideology **in violation of Federal anti-discrimination laws**." RJN, Ex. 1 § C.XVII(2)(a)(i) (emphasis added); *see also id.*, Ex. 2 at 10. Does this language mean that all DEI and DEIA programs are unlawful? And if not, how should recipients account for the Trump Administration's shifting reinterpretation of federal civil rights statutes? Salem has regularly agreed to comply with the Civil Rights Conditions, *e.g.*, Hutchinson Decl. Ex. 2 at 10, Ex. 3 at 10, Ex. 4 at 10, but the Administration now inserts vague concepts into the conditions and advances interpretations that depart from longstanding judicial precedent, leaving Salem unable to determine what compliance requires. *See supra* Section I.C; *see also City of Fresno*, 2026 WL 1998576, at *24 (anti-DEI conditions "provide no meaningful guidance on

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 22

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

how a grantee could comply with the Executive's changing interpretation of federal anti-discrimination law").

The uncertainty only deepened when former Attorney General Bondi issued the Discrimination Guidance Memo purporting to "clarif[y]" federal civil rights law. RJN, Ex. 12 at 1. This "guidance" conflicts with governing law. For instance, the Memo states that facially neutral criteria such as "cultural competence," "lived experience," or "geographic targeting" may violate federal law if intended to advantage or disadvantage protected groups. *Id.* at 2. But courts have "consistently" rejected the proposition that facially neutral criteria become unlawful simply because they correlate with race—even where the decision-maker was "well aware" of that correlation. *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing, inter alia, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)); *see also, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (not all discussions of how race affects a person's life, "be it through discrimination, inspiration, or otherwise," are unlawful); *Diemert v. City of Seattle*, 776 F. Supp. 3d 922, 949–50 (W.D. Wash. 2025) (affinity groups "open to any City employee" did not violate equal protection), *appeal docketed*, No. 25-1188 (9th Cir. Feb. 25, 2025).

The Memo's treatment of gender identity likewise departs from controlling precedent that recognizes discrimination against transgender individuals is discrimination because of sex. *See, e.g.*, *Bostock v. Clayton Cnty.*, 590 U.S. 644, 660, 662, 670 (2020) (acknowledging "Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them" and explaining "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex"); *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 571 (D. Md. 2025) ("[T]he Executive Orders[,

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 23

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

including the Gender Ideology Order,] discriminate on the basis of transgender identity, and therefore on the basis of sex."). Although the Supreme Court recently upheld state laws on participation in girls' and women's athletic competitions, it did so in the "distinct[]" context of competitive sports—not disaster relief grants. *See West Virginia v. B.P.J.*, No. 24-43, 2026 WL 1868739, at *8 (U.S. 2026). If Salem cannot rely on judicial precedent to determine what federal law requires, it cannot "ascertain what is expected of it," as *Pennhurst* demands. 451 U.S. at 17.

The consequences of guessing wrong are severe. The Discrimination Condition requires recipients to agree that compliance is "material" to the government's payment decision for False Claims Act purposes. A false certification can expose a recipient to treble damages and substantial civil penalties. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5(a). By requiring recipients to concede materiality in advance, the Condition attempts to relieve the federal government of proving an essential element of False Claims Act liability, while exposing recipients to extraordinary penalties for conduct that courts have not held unlawful. *See Universal Health Servs., Inc.*, 579 U.S. at 192; *see also City of Fresno*, 2026 WL 1998576, at *25 (False Claims Act liability "heightens the constitutional infirmities associated with the [anti-DEI] conditions' ambiguity" (cleaned up)).

The Administration's reinterpretation of federal civil rights law also clouds the meaning of the longstanding Civil Rights Conditions. Salem has never objected to complying with Title VI, Title IX, and similar statutes. It cannot, however, be required to accept the Administration's novel reinterpretations of those statutes in place of the law enacted by Congress and interpreted by the courts. This Court's relief should therefore clarify that compliance with the Civil Rights Conditions means compliance with governing law as interpreted by the judiciary.

The Executive Order Condition suffers from similar flaws. Executive orders can only direct federal agencies, not outside parties. Even assuming they could directly regulate grant recipients,

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 24

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the Condition remains hopelessly vague. It never defines what executive orders are "related to grants," explains how recipients are expected to comply with future executive orders that do not yet exist, or identifies which provisions impose obligations on recipients rather than agencies. The incorporated executive orders are themselves filled with undefined terms, including "promote gender ideology,"[7] "advance the President's policy priorities," "promote anti-American values,"[8] and "equity-related" activities.[9] As other courts have concluded, conditions incorporating such language are impermissibly vague. *City of Fresno*, 2025 WL 2721390, at \*15–16 ("[Such] conditions are impermissibly vague because they incorporate the equally vague language of the EOs themselves and because in some cases they do not specify which EOs are applicable to grantees and in all cases they do not explain how the EOs are applicable to grantees." (cleaned up; emphasis omitted)); *see also Santa Clara*, 815 F. Supp. 3d at 1035–36 ("[I]t is not clear what compliance with the [Executive Order] Condition [in DHS's FY25 Standard Terms] would entail, as it fails to articulate to what extent plaintiffs would be expected to adhere to President Trump's Executive Orders."); *City of Fresno*, 2026 WL 1998576, at \*25–26 (similar).

The Termination for Convenience Condition is also deficient. The Condition authorizes DHS to terminate grants based on undefined concepts such as "convenience," changes or updates to "agency priorities," or the "national interest." Together, these provisions impose no meaningful limits on DHS's termination authority and provide recipients no notice of when their grants may be cancelled. That falls well short of the Spending Clause's requirement that recipients receive clear notice of the conditions attached to federal funds. *See Pennhurst*, 451 U.S. at 17–18; *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 583–84 (2012).

---

[7] Gender Ideology Order § 3(g).
[8] Grantmaking Order § 4(b)(i)–(ii).
[9] Exec. Order No. 14151 § 2(b)(i).

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 25

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Courts have repeatedly ruled that the same and materially similar conditions likely violate the Spending Clause because they fail to provide the clear notice that *Pennhurst* requires. *See, e.g., San Francisco Unified Sch. Dist.*, 789 F. Supp. 3d at 745–50; *Santa Clara*, 815 F. Supp. 3d at 1033–36; *City of Fresno*, 2026 WL 1998576, at *24–26. The same conclusion follows here. Salem is likely to succeed on the merits of its Spending Clause claim.

### b. The Challenged Conditions Are Unrelated to the Purpose of the Grants.

The Spending Clause permits Congress to impose conditions only where they are germane "to the federal interest in [the] particular" program. *Dole*, 483 U.S. at 207–08 (cleaned up). The Challenged Conditions fail that requirement. Not only are they unrelated to disaster response or preparedness but they undermine the very purpose of the programs at issue.

Congress enacted the Stafford Act in response to the recognized consequences of disasters, including cause loss of life, suffering, property loss and damage, and disruption to the function of governments and communities. 42 U.S.C. § 5121(a). Congress expressly stated its intent to "provide an orderly and continuing means of assistance by the Federal Government to State and local governments in carrying out their responsibilities to alleviate the suffering and damage which result from such disasters." 42 U.S.C. § 5121(b). The PA, BRIC, and EMPG Programs implement that purpose. Among other things, the PA Program funds repairs, restoration, or replacement of public facilities damaged or destroyed by a major disaster. 42 U.S.C. § 5172(a). The BRIC Program funds cost-effective pre-disaster hazard mitigation measures designed to reduce injuries, loss of life, and property damage. 42 U.S.C. § 5133(b). And the EMPG Program broadly funds local governments in developing emergency management capabilities and carrying out all-hazards emergency preparedness activities. 6 U.S.C. § 762.

The Challenged Conditions do not advance those objectives. They regulate recipients'

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

unrelated policies on DEI and gender identity and require compliance with executive orders that have no connection to disaster recovery or mitigation. Moreover, the Discrimination and Executive Order Conditions are also inconsistent with the purpose of these grant programs. Nothing in the authorizing statutes addresses the subjects of those Conditions. To the contrary, Congress directed funds to be used for emergency assistance, infrastructure repair, and hazard mitigation, not for enforcement of federal policy preferences unrelated to disaster preparedness.

Congress's broader structure confirms the mismatch. The Stafford Act encourages issuance of grants to state and local governments that will, among other things, "identify[] and improv[e] the climate and natural hazard resilience of **vulnerable communities**." 42 U.S.C. § 5121(b)(7) (emphasis added). Further, Congress has required the President to issue regulations to guide personnel carrying out federal assistance functions at major disaster sites, including provisions for ensuring that relief and assistance activities be accomplished "in an **equitable** and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, disability, English proficiency, or economic status." *See* 42 U.S.C. § 5151(a) (emphasis added); *see also* 44 C.F.R. § 206.11(b) (corresponding regulation). And Congress has also required that disaster-related contracting give preference, where feasible, to local firms and individuals in affected areas. 42 U.S.C. § 5150(a)(1). These provisions reflect Congress's focus on effective and equitable disaster relief, not the elimination of DEI programs or enforcement of shifting executive policy priorities. Conditions that restrict or penalize equity-focused programs conflict with Congress's express directive to ensure equitable disaster response and to prioritize vulnerable communities. *See Santa Clara*, 815 F. Supp. 3d at 1027 (recognizing conflict between anti-DEIA executive orders and certain DHS grant programs' "goal in educating 'particularly vulnerable' populations about fire safety"); *City of Fresno*, 2026 WL 1998576, at *21–23, *26–27 (anti-DEI

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 27

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and executive order conditions conflict with congressional intent in enacting grant programs).

The same defect exists in the Termination for Convenience Condition. Congress structured the PA, BRIC, and EMPG Programs to provide reliable, predictable federal assistance for disaster recovery and mitigation. A regime that permits DHS to terminate grants for "convenience," including shifting "agency priorities" or evolving views of the "national interest," is unrelated to that statutory design. It allows the agency to displace Congress's funding decisions with post hoc policy judgments, undermining the stability that disaster planning requires and increasing the risk of delayed recovery and heightened harm to the public.

In short, Congress authorized the PA, BRIC, and EMPG Programs to help communities prepare for, respond to, and recover from disasters. The Challenged Conditions use those Programs to advance unrelated policy objectives. That disconnect is exactly what the germaneness requirement forbids. *See New York v. United States*, 505 U.S. 144, 172 (1992). For this reason as well, Salem is likely to succeed on the merits of its Spending Clause claim.

### 3. The Challenged Conditions Violate the Administrative Procedure Act.

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to constitutional right," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C). Salem is likely to prevail in showing that imposing the Challenged Conditions violates each of these requirements.[10]

---

[10] Imposing new conditions on recipients is a "final agency action" subject to review under the APA. *See id.* § 704. Final agency actions "mark the consummation of the agency's decisionmaking process" and are those "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). As several courts have held in similar cases, the decision to impose new conditions on federal grants satisfies both tests because it "articulate[s] that certain funds" will "require adherence to the" new conditions and "opens up the [recipient] to potential legal consequences," including withholding

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 28

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

First, as discussed above, the Challenged Conditions are "in excess of statutory jurisdiction," "not in accordance with law," and "contrary to constitutional right," because they do not derive from a congressional delegation of authority and they violate the constitutional protections addressed above. 5 U.S.C. § 706(2)(A)–(C); *supra* Section II.C.1. These Conditions are thus unlawful under the APA. *See City of Fresno*, 2025 WL 2721390, at *10, *12 (plaintiffs were likely to succeed on their APA claim where grant conditions were not authorized and "in some cases the statutes even contradict the conditions," and where conditions likely "violate Separation of Powers as in excess of statutory authority"); *Santa Clara*, 815 F. Supp. 3d at 1039 (similar for DEI and Executive Order Conditions attached to DHS grants); *City of Fresno*, 2026 WL 1998576, at *29  (same); *City of Chicago*, 2025 WL 3251222, at *7–9 (same).

Second, the Challenged Conditions are arbitrary and capricious because they fail the basic requirement that agency action be "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up). To pass muster, an agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). While agencies are free to change their existing policies, they must "display awareness that" they are doing so, provide "good reasons for the new policy," and demonstrate that they have taken account of "reliance interests" engendered by the prior policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

---

of funds if the recipient declines to accept the conditions. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018); *see also Planned Parenthood of N.Y.C., Inc. v. United States Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 328–29 (S.D.N.Y. 2018) (same); *King Cnty.*, 785 F. Supp. 3d at 884 n.18; *Santa Clara*, 815 F. Supp. 3d at 1037–39.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 29

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Here, DHS has provided no reasoned explanation or basis for its decision to impose the Discrimination and Executive Order Conditions on funds that Congress has appropriated for disaster relief and mitigation grant programs that have no reasonable connection to or nexus with those Conditions. Nor has DHS explained its decision to impose the Termination for Convenience Condition on congressionally appropriated disaster relief funds, contravening the OMB grant guidance and regulations—adopted by DHS in 2014—which do not permit termination for convenience, termination for changes in agency priorities after the time of the award, or termination where the agency is substituting its priorities for those identified by Congress. *See supra* Section I.B.3. Failure to provide **any** explanation for a final agency action is arbitrary and capricious under even the most lenient standard. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (when an "agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law"). DHS may attempt to justify these new Conditions on the grounds that the President ordered them through the series of executive orders discussed *supra* Section I.B.2. "[A]n executive order," however, "is not 'law,'" *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023), and "an agency must defend its actions based on the reasons it gave when it acted, not with post hoc rationalizations." *Lotus Vaping Techs., LLC v. FDA*, 73 F.4th 657, 668 (9th Cir. 2023) (cleaned up). And complying with an executive order neither exempts an agency from the "reasoning, deliberation, and process" required by the APA, nor permits it to "flip-flop" "on the whims of each new administration." *California v. Bernhardt*, 472 F. Supp. 3d 573, 600–01 (N.D. Cal. 2020), *appeal docketed*, No. 20-16793 (9th Cir. Sep. 16, 2020); *see also City of Fresno*, 2025 WL 2721390, at *8 (actions furthering presidential directive are not exempt from arbitrary-and-capricious review (collecting cases)).

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 30

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Nor has DHS considered Salem's reasonable reliance interests in the federal disaster relief and preparedness funds it needs to repair critical facilities and mitigate future risks. Salem has previously received such funds subject to lawful terms and conditions, but its grant funding has never been dependent on conforming to executive policy priorities unrelated to the purpose of the grant. *See* Hutchinson Decl. ¶¶ 26–29. Salem's budget planning relies on these grants, and the Challenged Conditions—which represent a change in agency position—upset settled expectations. *See City of Chicago*, 2025 WL 3251222, at *7 (plaintiffs demonstrated reliance interests in similar circumstances); *Santa Clara*, 815 F. Supp. 3d at 1039–40 (Discrimination Condition in DHS's FY25 Standard Terms was likely arbitrary and capricious where DHS's interpretation of illegal discrimination "has starkly changed" and "depart[s] from both federal anti-discrimination law and the statutory purposes of many grant programs without real explanation"); *City of Fresno*, 2026 WL 1998576, at *30 (same); *City of Fresno*, 2025 WL 2721390, at *8 (grant conditions prohibiting promotion of DEI, gender ideology, and elective abortion or requiring cooperation with federal immigration enforcement "reflect changes in agency position which require not only an explanation of reasoning but also consideration of reliance interests among other important factors").

In sum, Salem is likely to succeed in establishing that attaching the Challenged Conditions exceeded DHS's statutory authority, violated the Constitution, and was arbitrary and capricious in violation of the APA.

### D.  Salem Will Suffer Irreparable Harm If the Conditions Are Not Enjoined.

Salem must decide by August 17, 2026 to either accept unlawful Challenged Conditions or forgo federal funding earmarked for a vital public project. Martin Decl. ¶ 47. This is itself an irreparable harm, as a grant recipient may suffer constitutional injury from being forced into a

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 31

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"Hobson's choice" between accepting unconstitutional conditions and losing out on federal funding Congress appropriated for it to use within its community. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009); *City of Fresno*, 2026 WL 1998576, at *36.

For Salem, absent Court intervention, there is no meaningful choice. The Challenged Conditions require Salem to certify compliance with directives that directly conflict with its governing Code and institutional commitments to serve all members of its community without discrimination based on race, gender identity, or other protected characteristics. *See* Martin Decl. ¶¶ 10–15, 46, 59–60; Hutchinson Decl. ¶¶ 33–36; Salem Rev. Code ch. 97; *see also supra* Section I.D.1. That compelled choice inflicts an immediate constitutional injury that cannot be remedied after the fact.

Nor can Salem simply absorb the loss of federal funding. The projects at issue cannot be delayed for long: The already-awarded PA funds are intended to repair critical infrastructure ensuring Salem's continued ability to treat its wastewater, which is necessary to avoid contaminating the Willamette River with sewage. Martin Decl. ¶¶ 31–33, 41–42. The BRIC funding is needed to ensure safe access to the primary source of potable water for a service area of approximately 220,000 people. *Id.* ¶ 51. Delays in beginning the project increase risks due to possible flood or seismic events and continued deterioration of Salem's aged infrastructure. *Id.* ¶ 60. And the loss of EMPG funding threatens to undermine Salem's ability to provide essential emergency operations services. Hutchinson Decl. ¶ 40. Each project and program at issue in this Motion is all the more urgent because Salem is at risk for future natural disasters including flooding, earthquakes, and wildfires. *Id.* ¶¶ 17–24.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 32

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

If Salem declines DHS funds due to the unlawful Conditions, it will have to divert scarce local resources to replace lost federal funding. Leinenbach Decl. ¶¶ 6–15. That burden falls on a General Fund already under significant strain because expenditures have outpaced revenues despite expenditure reductions, efficiencies, and new revenue measures. *Id*. ¶ 9. Because Salem incorporates anticipated federal grant revenues into its budget planning, the loss of PA, BRIC, and EMPG funds would require it to redirect money from other essential services, including police, fire, and emergency medical services. *Id*. ¶¶ 7–10. It also would deplete contingency appropriations Salem relies on for unexpected expenses and emergencies. *Id*. ¶¶ 12–13 (providing recent examples). The Challenged Conditions compound those harms. *Id.* ¶ 13. Salem can no longer rely on expected federal disaster assistance in its budget planning and must preserve additional reserves against the possibility that federal grants will be unavailable. *Id*. As a result, Salem faces the prospect of using reserves to cover costs that PA, BRIC, and EMPG grants were intended to fund while simultaneously maintaining even larger reserves to respond to future disasters that also may receive no federal support. *Id*.

Reallocating limited public funds in this manner imposes immediate and irreparable budgetary and operational harms that cannot later be fully compensated. Meanwhile, this "uncertainty . . . interferes with [Salem's] ability to budget, plan for the future, and properly serve [its] residents." *City of Fresno*, 2025 WL 2721390, at *19 (cleaned up); *see also City of Evanston v. Barr*, 412 F. Supp. 3d 873, 886–87 (N.D. Ill. 2019); *City & Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025) (finding "irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"); *City of Fresno*, 2026 WL 1998576, at *36 (similar); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 33

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(acknowledging irreparable harm to "law enforcement and public safety interests" where state was enjoined from effectuating a duly enacted statute).

In short, uncertainty leaves Salem less resilient and more vulnerable to future disasters and emergencies, disrupts long-term planning and budgeting, diverts limited local funds from spending priorities, and erodes public trust. Leinenbach Decl. ¶¶ 15–16. *See also City of Los Angeles v. Sessions*, No. Cv-17-7215-R, 2018 WL 6071072, at *3 (C.D. Cal. Sep. 13, 2018) (finding irreparable harm where city had to either "diminish[] community trust and undermine[] public safety" by implementing objectionable policies or forgo funding). Salem will face irreparable harm if the Challenged Conditions are not enjoined.

### E.  The Equities Weigh in Salem's Favor.

The equities and public interest, which merge when the government is a party, tip sharply in Salem's favor. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The threat of harm to Salem and its residents far outweighs the federal government's interest in immediately imposing the conditions. *See Santa Clara*, 815 F. Supp. 3d at 1042 (equities and public interest prongs met where municipal plaintiffs' "interest in ensuring their communities receive funding for critical infrastructure, public safety, and emergency response programs far exceed[ed] defendants' interests," and the "general public['s]" interest in communities receiving funding and seeing grant programs carried out as Congress intended also strongly weighed in favor of preliminary injunction); *City of Fresno*, 2026 WL 1998576, at *37–38 (similar). And preserving Salem's constitutional rights is also in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (cleaned up)). A preliminary injunction would not harm the federal interest but merely maintain the status quo as to DHS's administration of the PA, BRIC, and EMPG

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 34

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Programs. Whatever interest DHS may assert in introducing the Challenged Conditions and in enforcing them during the pendency of this litigation pales in comparison to Salem's irreparable harm from enforcement of these new Conditions. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (where a plaintiff establishes a likelihood that the defendant violated federal law, both the public interest and the balance of equities favor preliminary injunction).

### III.    CONCLUSION

Federal agencies cannot dictate policy through grant conditions that are not authorized by Congress, are beyond Congress' power to authorize, and ultimately force local governments to adopt federal policy in contravention of the political will of their constituents. The harm to Salem is imminent; Salem must decide whether to accept the PA grant by **August 17, 2026**. Salem respectfully asks the Court to enter a preliminary injunction no later than that date barring DHS from imposing, enforcing, or otherwise denying grants to Salem based on the Challenged Conditions. Such an injunction is necessary to avoid harm to Salem and its residents.

DATED this 15th day of July, 2026.

PACIFICA LAW GROUP LLP

*/s/ Stacey H. Crawshaw*
Stacey H. Crawshaw, OSB #146074
Paul J. Lawrence*
Jamie Lisagor*
Carly Zipper*
401 Union St., Suite 1600
Seattle, WA 98101-2668
(206) 245-1700
Stacey.Lewis@pacificalawgroup.com
Paul.Lawrence@pacificalawgroup.com
Jamie.Lisagor@pacificalawgroup.com
Carly.Zipper@pacificalawgroup.com

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 35

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Thomas Cupani, OSB # 924654
City of Salem, Legal Department
555 Liberty St. SE, Room 225
Salem, OR 97301-3513
(503) 588-6395
TCupani@cityofsalem.net

*Attorneys for Plaintiff City of Salem*

 * *Pro Hac Vice application pending*

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 36

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,874 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 37

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th of July, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Oregon via the CM/ECF system which will send notification of such filing to all parties who are entered in this matter and registered with the CM/ECF system.

I hereby certify that I caused to be served, via the CM/ECF system, a true copy of the foregoing document upon the parties listed below:

Cameron Perla
Assistant United Stated Attorney
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2936
Ph: 503.727.1000
cameron.perla@usdoj.gov

*Counsel for Defendants DHS, FEMA, Markwayne Mullin, and Robert J. Fenton, Jr.*

DATED this 15th day of July, 2026.

*s/ Mendy Graves*
Mendy Graves
Litigation Assistant
Pacifica Law Group LLP

CITY OF SALEM'S MOTION
FOR PRELIMINARY INJUNCTION - 38

PACIFICA LAW GROUP LLP
401 UNION ST.
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750