**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**CAMERON PERLA, OSB #241820**
Assistant United States Attorney
Assistant United States Attorney
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
Email: Cameron.Perla@usdoj.gov
      Attorneys for the Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **CITY OF SALEM**, | Case No. 6:26 cv-01340-MC |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| **MARKWAYNE MULLIN in his official capacity as Secretary of the U.S. Department of Homeland Security; the U.S. DEPARTMENT OF HOMELAND SECURITY; ROBERT J. FENTON JR. in his official capacity as Senior Official Performing the Duties of the Administrator of the Federal Emergency Management Agency; and the FEDERAL EMERGENCY MANAGEMENT AGENCY,** | |
| Defendants. | |

Page 1      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

SUMMARY OF ARGUMENT ........................................................................................ 1

BACKGROUND................................................................................................................ 1

I.　　Factual Background.................................................................................................. 1

　　A.　DHS and FEMA Grant Administration Framework ........................................ 1

　　B.　DHS Standard Terms and Challenged Conditions............................................ 5

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.　　Plaintiff Fails to Establish This Court's Jurisdiction and Therefore has
　　　no Likelihood of Success on the Merits .............................................................. 8

　　A.　This Court Lacks the Power to Order Direct Monetary Payments Under
　　　　the Administrative Procedure Act...................................................................... 8

II.　　Plaintiff Has no Likelihood of Success on the Merits of its Claims
　　　Because it Lacks Standing.................................................................................... 11

III.　　Plaintiff is Otherwise Unlikely to Succeed on the Merits .............................. 13

　　A.　All Challenged DHS Conditions Are Lawful and Constitutional ................... 13

　　　　1.　The Anti-Discrimination Condition Is Constitutional ............................. 13

　　　　　　a.　The Grant Agreement Conditions Do Not Violate the "Separation
　　　　　　　　of Powers." ...................................................................................... 16

　　　　　　b.　The Anti-Discrimination Condition Does Not Violate the Spending
　　　　　　　　Clause ............................................................................................... 17

　　　　2.　The EO Condition Is Constitutional ....................................................... 20

　　　　　　a.　The EO Condition Does Not Violate the "Separation of Powers.".... 23

　　　　　　b.　The Termination for Convenience Provision is Not Unlawful ............ 24

i

IV.    No Challenged DHS Conditions Violate the APA ............................................. 26

   A.  Plaintiff's Potential PA and BRIC Grant Awards are Not Reviewable
Because They Are Discretionary Grants Committed to Agency Discretion ... 26

V.    The United States Does Not Retaliate Against Municipalities for
Engaging in Constitutionally Protected Activities .......................................... 29

VI.    Plaintiff's APA Claim Fails on the Merits ........................................................ 29

VII.    Plaintiff Has Failed to Demonstrate Irreparable Harm ................................ 31

VIII.    The Balance of the Equities and the Public Interest Favor Denying the
Motion ................................................................................................................ 33

IX.    Any Injunctive Relief Should Be Narrowly Tailored ....................................... 34

X.    Any Injunctive Relief Should Be Accompanied by a Bond .............................. 34

CONCLUSION ................................................................................................................. 35

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) .............. 32

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004) ...................................................................................... 8

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470
  (9th Cir. 1985) ........................................................................................................... 32

*Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005) ............................................................. 21

*Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, 2025 WL 2017177
  (D.N.M. July 18, 2025) ............................................................................................. 17

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359 (Fed. Cir. 2021) ........................... 9

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) ............................................ 19

*Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668 (9th Cir 1988) ................. 31

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) ....................................... 20

*Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881
  (D.C. Cir. Sept. 2, 2025) ............................................................................................. 9

*Dalton v. Specter*, 511 U.S. 462 (1994) ....................................................................... 16

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ...................................................... 8, 9

*Doe v. Tenet*, 329 F.3d 1135 (9th Cir. 2003) ............................................................... 11

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ......................................... 30

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ....................................... 29, 30

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ................................................... 7

*Gill v. Whitford*, 585 U.S. 48 (2018) ............................................................................ 11

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ........................ 8

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) .... 14

*Heckler v. Chaney*, 470 U.S. 821 (1985) ..................................................... 27

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997) ............................................ 10

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985)............................ 9

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ......................................................... 20

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ........................................................ 28

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025
   (9th Cir. 2013) ................................................................................ 28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................ 11, 12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873
   (9th Cir. 2009) ................................................................................. 7

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) .......................................................................... 8

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ............................. 17, 19, 26

*Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219 (2025) .................................. 9

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ..................................... 28

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ........................................................ 24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................... 29, 30

*Murthy v. Missouri*, 603 U.S. 43 (2024) .................................................... 11, 12

*National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998)........................ 24, 25

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ............... 9, 33

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................. 7, 33

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981)........................ 18, 31

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ..................................... 10

*Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62 (D.D.C. 2018) ................................. 28

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ................................................................... 32

*San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184
    (N.D. Cal. 2025) ................................................................................ 14, 15

*Serrato v. Clark*, 486 F.3d 560 (9th Cir. 2007) .......................................................... 28

*Sharp v. Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986) ............................................... 10

*Sierra On- Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984) ......... 7

*South Dakota v. Dole*, 483 U.S. 203 (1987) ............................................................... 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................. 11

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) ........................................... 32

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024) .................................................... 7

*State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) ...... 18, 20, 26

*State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) .................................................... 20

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ........................................................................... 14, 19, 31

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................................................... 11

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) .................................................................... 34

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ................................................................ 34

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) .................................................................. 33

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155
    (D.D.C. 2025) ..................................................................................... 10

*United States v. Virginia*, 518 U.S. 515 (1996) ......................................................... 31

v

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
   579 U.S. 176 (2016) ............................................................ 14

*Wickard v. Filburn*, 317 U.S. 111 (1942) ................................................. 10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................... 7, 16, 31, 33

## FEDERAL STATUTES

5 U.S.C. § 701(a)(2) ............................................................................ 27

5 U.S.C. § 702 ..................................................................................... 8

6 U.S.C. § 313 ...................................................................................... 1

6 U.S.C. § 762(b) .................................................................................. 5

6 U.S.C. § 762(d) ............................................................................. 5, 6

20 U.S.C. § 954(d)(1) ......................................................................... 25

28 U.S.C. § 1491(a)(1) .......................................................................... 8

31 U.S.C. § 3729(b)(4) ........................................................................ 13

42 U.S.C. § 2000d .......................................................................... 13, 19

42 U.S.C. § 5170 ............................................................................... 2, 3

42 U.S.C. § 5170c(a) .......................................................................... 28

42 U.S.C. §§ 5121–5207 ....................................................................... 2

## FEDERAL RULES

Fed. R. Civ. P. 65(c) ........................................................................... 34

## FEDERAL REGULATIONS

2 C.F.R. § 170.315 .............................................................................. 24

2 C.F.R. Part 200 .............................................................................. 2, 24

2 C.F.R. § 200.1 .................................................................................... 6

2 C.F.R. § 200.211(c)(1)...................................................................................... 2

2 C.F.R. § 200.300............................................................................................. 23

2 C.F.R. § 200.300(a)................................................................................. 2, 13, 17

2 C.F.R. § 200.300(b)......................................................................................... 19

2 C.F.R. § 200.303(b)........................................................................................... 6

2 C.F.R. § 200.340............................................................................................... 2

2 C.F.R. § 200.340(a)........................................................................................... 6

2 CFR § 200.342................................................................................................ 26

44 C.F.R. Part 206 ............................................................................................... 3

44 C.F.R. § 206.36............................................................................................... 2

44 C.F.R. § 206.38............................................................................................... 2

44 C.F.R. § 206.206(c)(1).................................................................................... 27

44 C.F.R. § 206.202(e)(1) ................................................................................... 27

44 C.F.R § 206.206............................................................................................. 26

44 C.F.R. §§ 206.201-206.208 ............................................................................. 3

## U.S. FEDERAL REGISTER

90 Fed. Reg. 8339 (Jan. 20, 2025) ....................................................................... 21

90 Fed. Reg. 8853 (Jan. 29, 2025) ....................................................................... 22

## SUMMARY OF ARGUMENT

This Court should deny Plaintiff's motion for extraordinary equity. Plaintiff's central claims fall outside the jurisdiction of this Court because they dispute contractual terms, are subject to the Tucker Act, and must be litigated in the U.S. Court of Federal Claims. Plaintiff also lacks standing to challenge conditions in grant programs where it currently faces no adverse federal action or award. Even assuming the Court had jurisdiction, Plaintiff is unlikely to prevail on the merits: the challenged contractual terms reflect the Department of Homeland Security ("DHS")/Federal Emergency Management Agency's ("FEMA") statutory and regulatory duties to ensure grant compliance, and there is no evidence of irreparable harm, particularly where any alleged injuries are economic and the balance of equities and public interest weigh against injunctive relief.

## BACKGROUND

### I.     Factual Background

#### A. DHS and FEMA Grant Administration Framework

FEMA was created in 1979 to assist communities across the United States during turbulent times and in the wake of disasters. Congress created DHS via the Homeland Security Act of 2002 and placed FEMA under DHS control. DHS administers numerous federal financial assistance programs through its components, including FEMA.

Under 6 U.S.C. § 313, FEMA's central mission is to reduce loss of life and property from all hazards by supporting a risk-based, comprehensive emergency

**Page 1      Defendants' Opposition to Plaintiff's Motion for Preliminary
             Injunction**

management system focused on preparedness, protection, response, recovery, and mitigation. FEMA carries out these responsibilities under a detailed statutory framework. Part of that framework is Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"). 42 U.S.C. §§ 5121–5207. Under the Stafford Act, FEMA can coordinate assistance when disasters have been declared by the President. 42 U.S.C. § 5170; 44 C.F.R. §§ 206.36, 206.38.  Specifically, the Stafford Act authorizes FEMA to administer disaster relief, preparedness, and mitigation programs, including both formula grants and competitive grants. *Id.* However, each program is subject to statutory requirements, implementing regulations, and grant administration rules adopted pursuant to the Uniform Administrative Requirements. 2 C.F.R. Part 200.

DHS ensures recipients of federal financial assistance comply with applicable federal statutes, regulations, and Executive Orders. *See* 2 C.F.R. §§ 200.211(c)(1), 200.300(a). DHS publishes standard terms and conditions ("Standard Terms") each fiscal year to accompany federal grant awards. These terms apply uniformly to DHS-issued grants unless a program specific statute or regulation requires deviation.

Beginning in Fiscal Year ("FY") 2025, DHS revised several Standard Terms to reflect (1) compliance certifications related to federal anti-discrimination laws, (2) compliance with Executive Orders applicable to federal grantmaking, and (3) standard termination provisions consistent with 2 C.F.R. § 200.340. These government-wide requirements apply across DHS grant programs, including the three grants at issue in this case, namely FEMA's Public Assistance ("PA"), Building

**Page 2      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

Resilient Infrastructure and Communities ("BRIC"), and Emergency Management Performance Grant ("EMPG") Programs.

On April 7, 2026, the President declared a major disaster in Oregon and that relief should be provided under the Stafford Act. *See* Ex. 1. FEMA-STATE Agreement at 1.

*Public Assistance Program*

PA grants assist state, tribal, territorial, and local governments in repairing or replacing public infrastructure damaged by major disasters after a presidential declaration. *See* 42 U.S.C. §§ 5170-5193. FEMA obligates PA grants to the States, including Oregon, which may then issue subawards to eligible local governments, including the City of Salem. *See* 44 C.F.R. §§ 206.201-206.208. PA awards incorporate the Standard Terms in effect at the time the major disaster was declared.

The Stafford Act requires that FEMA ensure the uniform application of eligible work, cost share requirements, and nondiscrimination protections. 42 U.S.C. §§ 5172–5173; 44 C.F.R. Part 206.

PA grants also have specialized requirements, including compliance with local state boards and regulations. A Scope of Work ("SOW") must be submitted with a PA grant application that explains what the work will entail, materials required, and other pertinent information to help FEMA determine if funding is appropriate. Maykovich Decl. ¶ 11. FEMA also conducts an Environmental and Historic Preservation ("EHP") review prior to grant approval. Declaration of Vincent Maykovich at ¶ 10.

**Page 3     Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

The "FEMA-STATE Agreement" ("State Agreement") was entered into between the State of Oregon and FEMA on April 28, 2026. Maykovich Decl. ¶ 7. This agreement permitted Oregon to pass potential awards to subrecipients such as Plaintiff and other cities and municipalities who were in turn required to comply with the requirements of all applicable laws and regulations, including the Stafford Act and applicable FEMA policies and guidance. Ex. 1 FEMA-STATE Agreement ¶4. Plaintiff claims that on May 26, 2026, it received approval for more than $1 million in PA funding for culvert and roadway repair following severe flooding in December 2025. Complaint ¶ 48. However, in fact, FEMA has not yet awarded Plaintiff any PA grant money for this project. Maykovich Decl. ¶ 13. Plaintiff has not yet completed the application process and submitted the required documentation and certifications. Plaintiff has not submitted a SOW. *Id.* at ¶10. Additionally, FEMA has not yet completed the required EHP review process or determined whether consultation with other federal agencies is needed to ensure compliance with environmental laws and regulations. *Id.* at ¶ 12.

*Building Resilient Infrastructure and Communities Program*

BRIC is FEMA's largest hazard mitigation program, funding competitive projects designed to reduce future disaster risk. BRIC awards incorporate DHS Standard Terms because FEMA administers the program under DHS-wide financial assistance requirements.

In Fiscal Year 2026, FEMA published a BRIC Notice of Funding Opportunity ("NOFO"). The NOFO informed applicants that resulting awards would include DHS

**Page 4      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

Standard Terms.  On July 7, 2026, Plaintiff applied for approximately $13.2 million to replace the access bridge serving its water treatment facility. The application period expired on July 23, 2026. BRIC is a competitive grant program and FEMA will select projects pursuant to the criteria set forth in the NOFO. No applicant is guaranteed an award. Cite to NOFO. ECF 14 at 12. *Emergency Management Performance Grant Program*

EMPG is a longstanding preparedness grant program funded through annual appropriations. Awards are issued to states on a formula basis, and states may subaward funding to local governments. See Request for Judicial Notice ("RJN"), ECF 15, Ex. 7 at 42; 6 U.S.C. §§ 762(b), (d). As with BRIC and PA, subrecipients receiving EMPG funds are subject to DHS Standard Terms incorporated at the time of award issuance.

According to Plaintiff, it previously received EMPG subawards through the State of Oregon. ECF 14 at 14-15.  In Fiscal Year 2025, Salem elected not to accept its EMPG subaward of approximately $80,000. ECF 14 at 15. FEMA did not direct the State of Oregon to withhold or deny EMPG funding, nor did FEMA communicate any compliance concerns to Salem.  DHS and FEMA have not taken any enforcement action against Salem concerning past or future EMPG participation based on the conditions challenged in this litigation. Maykovich Decl. ¶ 19.

## B. DHS Standard Terms and Challenged Conditions

The funding conditions challenged in this case require recipients of federal funding to: (1) certify that they comply with federal anti-discrimination law (2)

**Page 5        Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

acknowledge that such compliance is material to the government's grant award and (3) agree that program funds will not be put to specified unapproved uses.

Much of this language amplifies longstanding federal requirements that grant recipients comply with statutes such as Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the Rehabilitation Act of 1973. Agencies have long applied similar grant conditions. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award").

The Executive Order Condition in the FY25 Standard Terms requires recipients to "comply with the requirements of Presidential Executive Orders related to grants." RJN, Ex. 1 § C.XXXI. The FY26 Standard Terms requires compliance with "the requirements and actions of Presidential Executive Orders related to grants." *Id.*, Ex. 2 at 17.3.

*Termination for Convenience Condition*

Beginning in FY26, DHS included a termination for convenience provision consistent with 2 C.F.R. § 200.340(a). RJN, Ex. 8 at 29. Termination for convenience only applies to discretionary awards, as that term is defined at 2 C.F.R. § 200.1. *Id.* The term "discretionary award" does not include grants where legislation establishes an entitlement to the funds on the part of the recipient, such as block grants or those awarded based on a statutory formula; or disaster recovery grant. *See* Executive Order 14,332 (Aug 7, 2025). EMPG is awarded to states based on a statutory formula. RJN, Exh. 7 at 42; 6 U.S.C. § 762(d).

**Page 6      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

## LEGAL STANDARD

Emergency injunctive relief, such as a preliminary injunction, is "an extraordinary remedy[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In order to demonstrate the necessity of such relief, a Plaintiff must make a clear showing that: (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009),

The purpose of preliminary relief is to preserve the status quo pending final judgment. *Sierra On- Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). When preliminary relief changes the status quo and "orders a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations omitted). In such cases, the moving party "must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

**Page 7     Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

## ARGUMENT

I. **Plaintiff Fails to Establish This Court's Jurisdiction and Therefore has no Likelihood of Success on the Merits.**

### A. This Court Lacks the Power to Order Direct Monetary Payments Under the Administrative Procedure Act.

Generally, federal district courts lack jurisdiction to "order the payment of money under" the Administrative Procedure Act ("APA") because the federal government's sovereign immunity for claims seeking non-monetary relief "does not extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The APA's limited waiver also does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C. § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)).

Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir.

**Page 8      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

2004) (citation omitted). This prohibition extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see also Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2231 (2025) (explaining that courts have historically described federal grants as contracts); *Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881, at *9 (D.C. Cir. Sept. 2, 2025) (same). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

In *California*, the Supreme Court reiterated the preclusive scope of the Tucker Act when it stayed a district court order to make payments based on grants. The Supreme Court stated that the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *Dep't of Educ.*, 604 U.S. at 651 (citation omitted). Also, last August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*NIH*") (citation omitted). Accordingly, this Court should follow those rulings to the extent Plaintiff seeks to enforce an obligation to pay money for a grant is does not hold but merely is in the processing of potentially obtaining.

**Page 9**      **Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

"It is hardly lack of due process for the Government to regulate that which it subsidizes." *Wickard v. Filburn*, 317 U.S. 111, 131 (1942). As highlighted in *California* and *NIH*, any entitlement that Plaintiff may have to the funding they seek to preserve may arise solely on the basis of their potential federal grant awards; they have no statutory or constitutional right to such funding. Plaintiff's claims under the Constitution and the APA do not mean this Court has jurisdiction. That is because theories of standing, relief, and irreparable harm hinge on contractual routing of funding to Plaintiff as provided in its grant agreement. *See, e.g., Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act ...").

In short, Plaintiff "wants the Government to keep paying up" to maintain funding pursuant to contracts with the United States. *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *dismissed*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025). To the extent it seeks to enforce such contract obligations, their claims are "founded upon a contract" and "must be heard in Claims Court." *Id.* at 165 (quoting *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.")).

To determine whether the Tucker Act applies and the claims should be brought in the Court of Federal Claims, the Ninth Circuit applies a two factor test: (1) "'the source of the rights upon which the plaintiff bases its claims' and (2) 'the type of relief

**Page 10       Defendants' Opposition to Plaintiff's Motion for Preliminary
              Injunction**

sought (or appropriate).'" *Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003). Here, both factors point to the Tucker Act: Plaintiff's rights arise directly from grant applications and grant agreements, and the relief sought is payment of grant funds to support local projects. The Tucker Act therefore applies, and this case should be transferred to the Court of Federal Claims.

## II.    Plaintiff Has no Likelihood of Success on the Merits of its Claims Because it Lacks Standing.

 "At the preliminary injunction stage . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Murthy v. Missouri*¸ 603 U.S. 43, 58 (2024)). "Foremost among" the Article III standing requirements "is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court and the Ninth Circuit have repeatedly noted that Article III standing cannot be based on abstract harm. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (Article III injury "must actually exist" and cannot be "abstract"); *Lujan*, 504 U.S. at 583 ("abstract injury is not enough"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches"). For a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, a party must show that the plaintiff "establish a substantial risk of future injury," not a

**Page 11    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

"speculative" one. *Murthy*, 603 U.S. at 69.

Plaintiff lacks Article III standing because its alleged injury across the three PA, BRIC, and EMPG programs are speculative.

(1) PA Grant: Plaintiff alleges it was awarded PA funding on May 26, 2026, more than a year after DHS updated its Standards Terms with the Challenged Conditions. Compl. ¶ 49. However, this is inaccurate. No PA grant award has been awarded yet.

(2) BRIC Grant: Plaintiff has not been awarded a BRIC grant that contains the challenged conditions. Its application is pending. BRIC is a national, competitive, discretionary program. Whether Plaintiff will receive any award is speculative. Any alleged harm arising from conditions in a grant Salem may never receive cannot satisfy the requirement of a "specific connection" to injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 567 (1992).

(3) EMPG Grant: Plaintiff has not applied for an EMPG grant containing the challenged conditions.

Plaintiff seeks relief involving BRIC, PA, and EMPG, yet does not show actual or imminent injury for any of these programs. Its alleged harms are speculative because it has not been awarded PA, BRIC or EMPG funds and identifies no imminent enforcement action related to PA. As of now, there is no risk—let alone a "substantial" one—that Plaintiff will be required to accept the Standard Conditions for BRIC or EMPG. Plaintiff therefore lacks standing to challenge the Standard Conditions for those programs.

**Page 12      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

## III.    Plaintiff is Otherwise Unlikely to Succeed on the Merits

Aside from the above threshold merits problems, Plaintiff has not demonstrated it is likely to succeed on the merits of its claims. Both the Anti-Discrimination Condition and the EO Condition were implemented within FEMA's statutory authority in a manner consistent with past iterations of the Standard Terms implementing federal law for all recipients of federal funds.

### A. All Challenged DHS Conditions Are Lawful and Constitutional

### 1. The Anti-Discrimination Condition Is Constitutional

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination law. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to this authority, DHS, as a federal agency, and FEMA, as a component of DHS, must ensure that federal awards comply with federal law. DHS must administer awards such "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). All relevant requirements must be communicated to recipients and subrecipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id.*

The Standard Terms do exactly this. They inform recipients that they "must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 3729(b)(4)," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory

**Page 13       Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in . . . a discriminatory prohibited boycott." Standard Terms § C.XVII. It then incorporated EO 14,190 by reference, which identifies examples of discriminatory conduct, such as programs that stereotype or demean persons because of their race, color, sex, or national origin. *See* EO 14,190 § 2(b). These provisions reflect longstanding prohibitions in federal anti-discrimination law, including using protected characteristics "as a stereotype or negative." *Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 213 (2023) (noting race can "never" be used as "a stereotype or negative"). They also explain the materiality of false statements under the False Claims Act. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016).

For decades, applications for federal financial assistance have needed assurances of compliance with Title VI and executive regulations issued under Title VI. *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than federal ten agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). A certification requiring adherence to anti-discrimination law imposes no unexpected burden because recipients are already required to comply with the law.

Instructively, another district court denied a similar challenge to a DEI certification provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found.*

Page 14    **Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

*v. Trump*, 786 F. Supp. 3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). The Fourth Circuit similarly granted a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025).

Plaintiff acknowledges that it has "never objected to complying with Title VI, Title IX, and similar statutes." ECF 14 at 32. The anti-discrimination conditions at issue here require only compliance with existing law. Plaintiff's arguments rest on the incorrect premise that the contested conditions force it to violate anti-discrimination laws. To be clear, Plaintiff is also not being asked to sign on to the Administration's policy preferences, or the Administration's views about the proper interpretation of federal anti-discrimination laws. Plaintiff is simply agreeing not to violate the laws currently in place. It may disagree with the government's legal interpretations, and policy preferences in this area, but that has little to do with the condition, which simply asks funding recipients to certify that they are complying with anti-discrimination laws. Moreover, Plaintiff has not demonstrated how DHS would go against well-established anti-discrimination jurisprudence and instead is relying on vague assertions that the challenged provision raises questions about how it would apply in practice. ECF 14 at 28. *See also San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1221 ("Plaintiff have not provided sufficient evidence that the government has enforced or plans to enforce the *Certification Provision* in a way that implicates DEI programs beyond those that 'violate any applicable Federal anti-

Page 15    **Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

discrimination law.'"). Finally, Plaintiff repeatably refers to concepts of "gender inclusivity" and "gender identity". ECF 14 at 9, 10, 12, 13, 15, 17-19, 26, 31. However, Plaintiffs have not identified anything within the grant agreements which address these concepts.

   a. The Grant Agreement Conditions Do Not Violate the "Separation of Powers."

Plaintiff argues that the Anti-Discrimination Condition "[v]iolate[s] the Separation of Powers." ECF 14 at 17 - 20. Not so. Plaintiff asserts that "no statute gives DHS the power", *id.* at 17, to impose the challenged conditions but cites various statutory doctrines without elaborating which one applies. *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses Plaintiff's ability to raise essentially statutory arguments with constitutional window dressing. There, the Supreme Court reversed a federal circuit court that had reasoned that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine. *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. The Court should thus ignore Plaintiff's attempt to constitutionalize its statutory claim. *See New York v. NSF,* No. 25-cv-4452, 2025

**Page 16     Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

LEXIS 148779 (S.D.N.Y. Aug. 1, 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*). And, as discussed *supra*, FEMA fully complied with the relevant governing statutes. Indeed, FEMA is *required* to include conditions to ensure that recipients comply with anti-discrimination law. *See* 2 C.F.R. § 200.300(a). That Congress did not specifically spell out that FEMA must enforce anti-discrimination laws in each statute governing a grant program does not remove FEMA's authority to ensure that recipients follow those laws. There is no "Separation of Powers" violation here.

### b. The Anti-Discrimination Condition Does Not Violate the Spending Clause.

Plaintiff alternatively contends that the condition violates the Spending Clause. As an initial matter, the Spending Clause limits Congress, not Executive Branch decisions about how to expend appropriated funds. *See Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, 2025 WL 2017177, at *10 (D.N.M. July 18, 2025) ("[T]he Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'") (citation omitted).

Even if the Spending Clause applies, the challenge still fails because the clause requires that conditions be unambiguous and be "in pursuit of the general welfare." and is the condition here is unambiguous and relates to the general purpose of enforcing anti-discrimination law. *See Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted). The funding must "bear *some relationship* to the purpose of the federal spending," but that is a "low-threshold." *State ex rel. Becerra v.*

**Page 17      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

*Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018). In any event, "Congress may . . . 'further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted).

Plaintiff argues that the anti-discrimination condition is ambiguous. *See* ECF 14 at 21-25. But the condition specifically requires "compl[iance] with all applicable Federal anti-discrimination laws," including by "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in . . . a discriminatory prohibited boycott." Standard terms § C.XVII(2)(a)(i)-(ii). To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24–25. States make an "informed choice" when the Federal Government makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. Indeed, the Ninth Circuit has recognized that the Spending Clause is satisfied where a "statute's intention to impose a condition is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There is no requirement to "list every

**Page 18    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

Plaintiff identifies no ambiguity about whether it is subject to the conditions. While FEMA requires recipients to certify that any DEI programs they operate comply with anti-discrimination law, Plaintiff cannot plausibly argue that the more specific certification is impermissible given that it is subsumed within the broader certification prohibiting funding recipients from operating *any* programs that violate federal anti-discrimination law. Indeed, it is unclear why Plaintiff believes this provision is ambiguous—it claims that it is "required to accept the Administration's novel reinterpretations of those statutes in place of the law enacted by Congress and interpreted by the courts." ECF 14 at 32. But that argument ignores both the Supreme Court —which recently reinforced longstanding precedent that stereotyping and discrimination against other races for the benefit of certain races are illegal, *Students for Fair Admissions*, 600 U.S. at 211-12—and Congress's express requirements for recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1.[1] The consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, *see* ECF 14 at 24, does not make the

---

[1] Plaintiff suggests that following the Standard Terms may cause them to ignore the Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), *see* Mot. for P.I. at 23, but the relevant regulations make clear that agencies must ensure that recipients do not discriminate "based on sexual orientation and gender identity consistent with the Supreme Court's reasoning in *Bostock*." 2 C.F.R. § 200.300(b). Plaintiff does not demonstrate that it would be forced to ignore *Bostock* if it chooses to accept federal funds.

**Page 19      Defendants' Opposition to Plaintiff's Motion for Preliminary
              Injunction**

requirement to comply ambiguous. *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome"). Plaintiff identifies no instance in which DHS or FEMA has penalized any recipient for misunderstanding these conditions.

Plaintiff also asserts that the Anti-Discrimination condition is not "germane" to the expenditure's purpose. Compl. ¶ 196. But the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019). The Supreme Court "has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.*

Plaintiff cites no case where similar conditions enforcing federal anti-discrimination law have been held to be unrelated to the grantee's receipt and expenditure of federal funds. That's because these conditions prevent the expenditure of federal funds on activities that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### 2. The EO Condition Is Constitutional

The Executive Branch must "take Care that the laws be faithfully executed." U.S. Const., Art. II, § 3. One method this can be attained is via Executive Order ("EO"). In order to understand the meaning of an EO, "[a]s is true of interpretation of statutes, the interpretation of an Executive Order begins with its text," which

**Page 20        Defendants' Opposition to Plaintiff's Motion for Preliminary
            Injunction**

"must be construed consistently with the Order's 'object and policy.'" *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005). Since January 20, 2025, several executive orders have directed agencies to review and revise federal grant programs. Executive Order 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025), instructs "[e]ach agency, department, or commission head" to "terminate, *to the maximum extent allowed by law, . . .* 'equity-related' grants or contracts." *Id.* § 2(b) (emphasis added).

As outlined in EO 14,173, the central purpose was to "enforc[e] our civil-rights laws" by "ending illegal preferences and discrimination." EO 14,173 § 1. That EO contains a certification provision instructing all agency heads to "include in every contract or grant award" a requirement that the recipient "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws" because that certification is material to the government's payment decisions. *Id.* § 3(b)(iv)(A)-(B). The EO also directs the Attorney General, in consultation with federal agencies, to write a report identifying "[t]he most egregious and discriminatory DEI practitioners" and outlining a plan of action to "deter DEI programs or principles . . . that constitute illegal discrimination or preferences," including through "[l]itigation," "[p]otential regulatory action and sub-regulatory guidance," and "[o]ther strategies." *Id.* § 4(b). EO 14,173 made clear, however, that it did not restrict recipients "from engaging in First Amendment-protected speech." *Id.* § 7(b).

The Standard Terms state that "[r]ecipients must comply with all applicable Federal anti-discrimination laws," including by not "operat[ing] any programs that

**Page 21    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination law" or "engag[ing] in . . . a discriminatory prohibited boycott." *Id.* § C.XVII(2)(a)(i)-(ii). DEI is defined as "diversity, equity, and inclusions"; DEIA is defined as "diversity, equity, inclusion, and accessibility"; and discriminatory equity ideology is defined by reference to Executive Order 14, 190, 90 Fed. Reg. 8853 (Jan. 29, 2025), entitled *Ending Radical Indoctrination in K-12 Schooling* ("EO 14,190"). Standard Terms § C.XVII(1)(a)-(c). EO 14,190, in turn, defines that term as "an ideology that treats individuals as members of preferred or disfavored groups, rather than as individuals, and minimizes agency, merit, and capability in favor of immoral generalizations," and it provides examples of discriminatory treatments, such as: (1) saying members of one race, color, sex, or national origin are "inherently superior" to members of another; (2) ascribing moral character or status based on race, color, sex, or national origin; (3) saying members of a certain race, color, sex, or national origin should feel guilty or receive adverse treatment based on actions committed by other members of the same race, color, sex, or national origin; and (4) discriminating against or receiving adverse treatment to achieve diversity, equity, and inclusion. EO 14,190 § 2(b).

The Standard Terms emphasize that "[r]ecipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference." Standard Terms § C.XXXI.

Plaintiff's challenge to the EO Condition is similarly misguided. FEMA

**Page 22      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

included within its Standard Terms a requirement that all recipients comply with all executive orders by the President related to grants and grants only. *See* Standard Terms § C.XXXI ("Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference."). That condition is imminently reasonable, as it requires recipients to confirm compliance with executive orders that relate to grants that recipients agreed to take on.

Like with the Anti-Discrimination condition, Plaintiff argues that the EO Condition violates the "Separation of Powers" and the Spending Clause. Both arguments lack merit.

### a. The EO Condition Does Not Violate the "Separation of Powers."

Plaintiff again attempts to recast statutory arguments as constitutional ones. *Dalton* makes clear that claims of exceeding statutory authority cannot be reframed as separation-of-powers violations. *See supra.*

But, in any event, DHS is required to incorporate into the terms of its grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see* 2 C.F.R. § 200.300. DHS has also applied similar conditions for several years. The EO Condition, while worded slightly different, is also not new. In 2021, 2022, and 2023, DHS's Standard Terms and Conditions contained a provision that required recipients to follow "relevant Executive guidance." Specifically, those Standard Terms said, "By accepting this agreement, recipients, and their executives, as defined in 2 C.F.R. § 170.315, certify that their . .

**Page 23      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

. policies are in accordance with OMB's guidance located at 2 C.F.R. Part 200, all applicable federal laws, and relevant Executive guidance."[2] Like those prior Standard Terms, the EO Condition here is lawful and within DHS's authority. Finally, Plaintiffs' facial challenge to the EO Conditions does not explain what possible hypothetical ambiguities exist. Such "facial challenges are disfavored" because courts must examine "how a law works in all of its applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (explaining facial challenges in the First Amendment context).

### b. The Termination for Convenience Provision is Not Unlawful.

Plaintiff argues that the Termination for Convenience Condition is impermissibly vague but this argument lacks merit. This condition does not even apply to two of the three grants at issue here, *i.e.*, PA grants or EMPG grants.

Moreover, as to BRIC grants, which are discretionary, the Supreme Court has held that there is no constitutional guarantee of clarity in grant or contract criteria, even if these criteria are set by statute or regulation. In *National Endowment for the Arts v. Finley,* 524 U.S. 569 (1998), the Court rejected a vagueness challenge to the National Foundation on the Arts and Humanities Act, which provides that grants

---

[2] *See* U.S. Dep't of Homeland Sec, FY 2021 DHS Standard Terms and Conditions (Feb. 17, 2021),https://www.dhs.gov/sites/default/files/publications/fy_2021_dhs_standard_terms_and_conditions_version.pdf (last visited July 28, 2026); U.S. Dep't of Homeland Sec, FY 2022 DHS Standard Terms and Conditions (Jan. 24, 2022), https://www.dhs.gov/sites/default/files/2022-01/fy_2022_dhs_terms_and_conditions_version_2_dated_jan_24_2022_508.pdf (last visited July 27, 2026); U.S. Dep't of Homeland Sec, FY 2023 DHS Standard Terms and Conditions (Nov. 29, 2022), https://www.dhs.gov/sites/default/files/2023-01/FY%202023%20DHS%20Terms%20and%20Conditions%20Version%202%20Dated%20November%2029%202022.pdf (last visited July 27, 2026).

**Page 24        Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

shall be awarded according to "artistic excellence and artistic merit ..., taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public," 20 U.S.C. § 954(d)(1). The Court recognized that these standards were "undeniably opaque," such that they would raise "substantial vagueness concerns" in the context of a "criminal statute or regulatory scheme." *Finley,* 524 U.S. at 588.

In the context of competitive grants, however, the Court explained that this imprecision raised no such concerns. That is because "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Id.* at 589. A contrary conclusion would render unconstitutional "all Government programs awarding scholarships and grants on the basis of subjective criteria such as 'excellence,'" which the Supreme Court declined to do. *Id.* at 589 (citation omitted).

Plaintiff asserts that the DHS Standard Terms and Conditions includes language that is impermissibly vague because it that states that a grant may be terminated for "convenience, pursuant to Executive Order 14332, Improving Oversight of Federal Grantmaking, including when the award no longer advances agency priorities or the national interest," RJN, Ex. 2 at 16. But this creates no greater problem than a decision to terminate grants that are not "excellent" and that is so even if, "as a practical matter," putative grantees "may conform ... to what they believe to be the decision-making criteria in order to acquire funding." *Finley,* 524

**Page 25**     **Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

U.S. at 589.

Finally, the underlying grant agreements are still subject to the agency appeal and arbitration process. For PA the right to appeal and arbitration is under 44 C.F.R § 206.206 and § 423 of the Stafford Act. For EMPG and BRIC the right to appeal a termination is under 2 CFR § 200.342. Specifically, this allows for a recipient to appeal a decision after an award or denial of grants.

### c. The EO Condition Does Not Violate the Spending Clause

The EO Condition does not violate the Spending Clause because it is unambiguous and is related to the purpose of the grants. Like the Standard Terms issued in prior years, the EO Condition requires the Plaintiff to comply with Executive Orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Condition here is as clear as those prior requirements and readily satisfies the Spending Clause standard. *See Newland*, 314 F.3d at 1067.

The EO Condition surpasses the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. DHS is required to ensure that all grants comply with federal law, and the EO Condition is another way to ensure that requirement is met.

## IV.    No Challenged DHS Conditions Violate the APA

### A. Plaintiff's Potential PA and BRIC Grant Awards are Not Reviewable Because They Are Discretionary Grants Committed to Agency Discretion

Plaintiff is unlikely to prevail on its APA claim for two of the challenged grants,

**Page 26     Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

PA and BRIC, because they are discretionary. Those grants are:

   i.    PA grant, which has governing regulations giving FEMA final authority to approve funding for all projects, 44 C.F.R. § 206.202(e)(1); 44 C.F.R. §206.206(c)(1);

   ii.   BRIC grant, which allows FEMA to choose which grants to award on a competitive basis through a neutral peer review process. 42 U.S.C.§ 5133(f)(1). RJN, Ex. 3.

For these grants, Plaintiff fails to demonstrate that there are standards for the Court to apply in reviewing the Anti-Discrimination and EO Conditions. Ordinarily, for discretionary grants, agencies are free to reject applications in what is a competitive process. And "before any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id*. (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory

**Page 27    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This is why agency grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiff cannot overcome the presumption that the Anti-Discrimination and EO Conditions—which both merely reiterate that recipients must comply with federal anti-discrimination law and all executive orders—are unreviewable for the two discretionary grants. For both of these grants, there is limited guidance for how the grants should be distributed. *See,* 42 U.S.C. § 5170c(a). None limit FEMA's discretion to issue funding, much less do they prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

**Page 28    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

**V.      The United States Does Not Retaliate Against Municipalities for Engaging in Constitutionally Protected Activities.**

Plaintiff requests a preliminary injunction to prevent retaliation against it for participating in this lawsuit. ECF 14 at 8. This argument is meritless. FEMA enters into hundreds of contracts with the same States, municipalities, cities and counties every year regardless of whether previous grants were allowed or denied.  Plaintiff itself has applied for several grants over the previous decades. Many of these grants were accepted, some were denied, and some even went to arbitration. Plaintiff's argument is not supported by the facts here.  Plaintiff has no likelihood of success on this speculative claim.

**VI.     Plaintiff's APA Claim Fails on the Merits**

Plaintiff's APA argument parrots their mistaken assertions that DHS violated by the Constitution by supposedly exceeding its authority to implement the Anti-Discrimination and EO Conditions. As discussed above, FEMA is required to enforce all federal anti-discrimination laws and has the authority to require all recipients to follow executive orders, as it did in earlier fiscal years.

FEMA's implementation of the challenged conditions was also not arbitrary or capricious, even assuming *arguendo* that implementation is somehow "final agency action" as required to sustain an APA claim. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to

**Page 29      Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

"act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423.

Plaintiff argues that the anti-discrimination policies are new. *See* ECF 14 at 14. Plaintiff concedes that agencies are "free to change their existing policies" but must "'display awareness that' they are doing so, provide 'good reasons for the new policy,' and demonstrate that they have taken account of 'reliance interests' engendered by the prior policy." *Id.* at 29 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). But neither the Anti-Discrimination Condition nor the EO Condition is "new." Although both conditions have been worded differently in the past, DHS has long required recipients to comply with all anti-discrimination laws, *see, e.g.*, U.S. Dep't of Homeland Sec, FY 2016 DHS General Terms and Conditions (Jan. 29, 2016), https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202016%20DHS%20Standard%20Terms%20and%20Conditions%20Version%206-0%20Dated%2001-29-2016_0.pdf (last visited July 24, 2026) (requiring compliance with federal anti-discrimination laws and requiring recipients to provide information if they were accused or found to have violated any anti-discrimination law), and has required recipients to follow all executive guidance since at least 2021, *see supra* 17-18. There is thus no "new" policy.

Plaintiff also argues that FEMA "arrogates" the realm of the judicial and legislation branches by trying to "enact statutes and interpret them." ECF 14 at 28. However, FEMA's policies are consistent with judicial interpretation. Recipients are not permitted to accept federal funds while impermissibly participating in stereotyping individuals based on their race, color, sex, or national origin or

**Page 30    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

discriminating against them without satisfying the requisite level of scrutiny required by the Constitution. *See Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 212 (2023) (outlining the Court's prior explanations of the dangers with race-based government action and why strict scrutiny must be applied); *see also United States v. Virginia*, 518 U.S. 515, 555 (1996) (gender-based classifications are subject to "heightened scrutiny"). Plaintiff also does not explain what reliance interest they could have in being able to violate executive orders related to grants while participating in programs funded by the federal government. Any harm to the public safety of Plaintiff's communities due to their choice not to accept federal funds with appropriate conditions is not caused by the federal government. *See* ECF 14 at 42 (arguing that Defendant's Conditions leaves Plaintiff "less resilient and more vulnerable to future disasters and emergencies, disrupts long-term planning and budgeting, diverts limited local funds from spending priorities, and erodes public trust.") Instead, any harm is self-inflicted if Plaintiff choose to reject the grants.

## VII.  Plaintiff  Has Failed to Demonstrate Irreparable Harm

A plaintiff seeking the extraordinary remedy of a preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (citation omitted). The "possibility" of such harm is insufficient, *id.*, as is "speculative injury," *id.* at 21; Plaintiff must show both immediacy and likelihood that they will be irreparably harmed absent emergency relief. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir 1988).

**Page 31**    **Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

Plaintiff has failed to make that showing here because, fundamentally, the harm it asserts is economic. *See,* ECF 14 at 41 (describing the "budgetary and operational harms that cannot later be fully compensated") It seeks the payment— on the terms that it prefers—of federal funds pursuant to contracts with the federal government and, as discussed elsewhere, Plaintiff can pursue such relief in the Court of Federal Claims. The injuries Plaintiff asserts are thus definitionally not irreparable, *see, e.g., Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), particularly because Plaintiff alleges no "threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citation omitted).

Plaintiff also asserts that it faces harm from being put to the choice of either "accepting Challenged Conditions (which it cannot do consistent with its Code) or forgoing millions of dollars for critical capital projects and emergency management." ECF 14 at 25. But that argument fails. There is no constitutional violation, and it is always the case that "if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). If a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government. Nor does Plaintiff demonstrate that the mere acceptance of terms it considers to be "unconstitutional"—but that generally require it to comply with otherwise applicable federal law—imposes any concrete, imminent

Page 32      **Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

harm necessitating extraordinary preliminary relief.

Plaintiff does not claim that Defendants have suspended funding, threatened termination, issued a compliance notice, or taken any adverse enforcement step. Nor does Plaintiff identify an instance in which the Challenged Conditions have prevented Plaintiff from performing work or responding to emergencies, nor does it identify any federal action that would imminently disrupt operations. Speculative predictions about future disasters, potential cost increases, or hypothetical delays do not transform budgetary consequences into irreparable injury.

## VIII.    The Balance of the Equities and the Public Interest Favor Denying the Motion

To obtain extraordinary equity here, Plaintiff must also demonstrate that "the balance of equities tips in [its] favor" and "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). (citation omitted). These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

In arguing that the public interest weighs in its favor, Plaintiff mostly repackages its arguments on alleged irreparable harm and on the merits. Those arguments fail. On the other hand, granting Plaintiff's motion would significantly disrupt DHS's ongoing consideration of grant applications for the upcoming year. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (granting request for stay of injunction "to avoid [] disruptive effect[s]" on government operations). Further, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover. *See NIH*, 145 S. Ct. 2658. This decision must "inform how a court should exercise its equitable

**Page 33    Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**

discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Therefore, the balance of the equities and public interest favor denying Plaintiff's request for injunctive relief.

## IX.    Any Injunctive Relief Should Be Narrowly Tailored

In any event, any injunctive relief should be narrowly tailored to provide only what "will offer complete relief to the plaintiff before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). In line with these principles, to the extent the Court intends to grant Plaintiff's request for a preliminary injunction, any preliminary relief should be limited to address any established harms of the present Plaintiff. In particular, that relief should flow only against any particular defendants and particular terms and conditions, imposed in specifically identified grant programs, with respect to which the present Plaintiff demonstrates all requirements for emergency injunctive relief. This is important here, where Plaintiff lumps together many unrelated parties (including DHS components not named in the Complaint), grant programs, and grant terms. And any injunction should, at most, enjoin only those portions of Defendant's identified grant conditions which can be read to require actions beyond complying with federal law (something Plaintiff are independently required to do).

## X.    Any Injunctive Relief Should Be Accompanied by a Bond.

Any potential preliminary injunction should also be accompanied by a bond. Fed. R. Civ. P. 65(c). If the Court were to enter an injunction, Defendants ask for a bond amount that reflects the costs and financial disruption to DHS's administration to the grants at issue in this proceeding resulting from Plaintiff's requested relief.

Page 34    Defendants' Opposition to Plaintiff's Motion for Preliminary
Injunction

## CONCLUSION

For all these reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted this 29th day of July 2026.

Respectfully submitted,


SCOTT E. BRADFORD
United States Attorney

*/s/ Cameron Perla*
CAMERON PERLA
Assistant United States Attorney

Attorneys for Defendants

**Page 35    Defendants' Opposition to Plaintiff's Motion for Preliminary
Injunction**